### SCOVILL *v.* CITY OF YPSILANTI.

MUNICIPAL CORPORATIONS—YPSILANTI CHARTER—COMMON COUNCIL —DUTIES—TAXATION—PAVING.

> Where the charter of the city of Ypsilanti (section 323) imposed upon the common council the duty to assess and levy taxes to raise funds for paving and other municipal purposes, the council could not evade its responsibility by calling a special election of the voters in a ward to determine the amount of a proposed pavement to be levied against the property owners and the amount to be borne by the ward as a whole.

Appeal from Washtenaw; Sample, J. Submitted April 15, 1919. (Docket No. 10.) Decided October 6, 1919.

Bill by Henry R. Scovill and others against the city of Ypsilanti to set aside a portion of a special assessment. From a decree for plaintiffs, defendant appeals. Reversed, and bill dismissed.

*John P. Kirk,* for plaintiffs.

*Floyd E. Daggett (George J. Burke,* of counsel), for defendant.

STEERE, J. The city of Ypsilanti appeals from a decree of the Washtenaw county circuit court, in chancery, setting aside so much of certain special taxes levied by said city against plaintiffs' property for paving purposes as exceeds 8% of the assessed valuation thereof.

Forest avenue and Huron street in said city, upon which plaintiffs' specially assessed property fronted, were paved in 1916 at a cost of $1.80 per square yard. It is indicated in the record and appears from undisputed statements in the briefs of counsel that in 1915 a considerable amount of paving was done in the city, and its authorities took action that year for paving various highways within the municipality to an extent that the work could not be, or was not, all done that year, as certain paving was at the same time ordered for 1916. Amongst the various streets ordered paved were Forest avenue and Huron street from Cross street to the Lake Shore railroad. A resolution of the common council ordering this paving was adopted on August 17, 1915, and stated the estimated cost was $1.15 per square yard for the kind of paving to be laid upon those streets, specifications for which were on file with the city clerk. The paving done pursuant to such official action in 1915 was of the specified kind and laid at the proposed price of $1.15 per square yard. The resolution of August, 1915, ordering this paving stated:

"Resolved further, that it is the purpose of the common council to assess the cost of the aforesaid paving in the following manner, to wit: One-fourth of the cost to be assessed against the city at large, 15% to be assessed against the highway districts in which the aforesaid streets are situated and 60% against the property fronting on the aforesaid streets according to frontage."

The city of Ypsilanti contained five highway dis-

tricts, each having a special highway fund. The third ward of the city, in which the paving in controversy was done, constituted the third highway district. There was opposition to this paving by owners of property fronting upon these streets, particularly on Forest avenue. Remonstrances were filed with the city council and it is stated legal steps were contemplated by parties in interest to prevent the council proceeding with it the following summer as proposed.

The chief indicated objection was to the effect that in this instance the proportion of cost proposed to be imposed on the owners was an excessive burden owing to the comparatively small value of the property which would have to pay the 60%. After consulting with the supervisor of that district and examining his assessment roll, a member of the council named Lathers called the matter up at a meeting of the council held March 20, 1916, and a resolution offered by him was adopted to submit to the electors of the third ward at the annual election to be held April 3, 1916, a question upon the subject propounded as follows:

"Shall the cost of paving levied against any property for the purposed Forest avenue and Huron street paving in excess of 8% of the assessed valuation of such property be borne by the ward as a whole? Yes.
"Shall the cost of paving levied against any property for the purposed Forest avenue and Huron street paving in excess of 8% of the assessed valuation of such property be borne by the ward as a whole? No."

A further resolution was passed at that meeting on motion of Alderman Dawson directing the clerk to advertise for bids for paving said streets according to specifications then on file in the clerk's office. The clerk was also instructed to have ballots printed for submission of the proposed question to the electors of the third ward and other requisite steps taken. Proper notice was given of the submission of this question, ballots in positive and negative form were

prepared as directed, supplied at the voting precincts of the third ward and used by the electors voting upon the question.

The city records show that on April 6, 1916, the common council met as a canvassing board and duly canvassed the vote upon this proposition, declaring the same carried by a majority of 18 votes. The tally sheets of that ward for that election showed a total vote of 287, of which 140 votes were cast in favor of the proposition and 122 against it, 25 of the electors not voting on that question.

The resolutions of the council authorizing such election and various steps taken by it and under its direction in that connection, including the canvass and determination of the council as to the result of the vote, were not thereafter reconsidered or rescinded by any resolution relating to that subject. Nor were those streets paved according to the specifications on file with the clerk at the time such proceedings were had, under which it is admitted bids were made at a price of $1.15 per square yard. A new city engineer was engaged in 1916, and the former plans and specifications for this paving were replaced by new ones calling for a different and more expensive pavement. By direction of the council at a meeting held July 17, 1916, bids were advertised for construction of such pavement, to be filed with the clerk by August 7, 1916, and on that date a bid was accepted and contract let therefor, by resolution of the council, "at a price of 50c per cubic yard of excavation and $1.80 per square yard of pavement." At a meeting of the council on August 21, 1916, the mayor interposed his veto to the contemplated paving of Forest avenue, but a resolution ratifying the proceedings taken and authorizing the paving was passed over his veto by a vote of 9 to 1. The pavement proposed and acted upon prior to the special election was specified to be of two course

concrete while that authorized by the council on July 17, 1916, and subsequently constructed, was a pavement of five inches of concrete and a two-inch wearing surface of asphalt. After this pavement was laid a resolution was passed by the council providing that 25% of its cost should be paid by the city at large, 15% by the third ward and 60% by the owners of property fronting on the street paved, which is testified to be the usual and customary apportionment for cost of paving streets adopted by the council throughout the city. Concededly this imposes upon the property owners a special tax for the improvement several times greater than it would be on a basis of 8% of the assessed valuation of their taxed property.

It is plaintiffs' contention that the council by its resolution of March 20, 1916, fairly submitted to the voters of the third ward the question of paving the two streets at an election regularly held and duly noticed, with the purpose and object fully set forth in the resolution appointing such election, that such proceeding is authorized by statute and the council bound by the result, which determines the method of assessing and collecting the special tax. In substantiation of this position reference is made to section 2924, 1 Comp. Laws 1915 (1 Comp. Laws 1897, § 3008), being section 2 of chapter 6 of Act No. 215, Pub. Acts 1895, providing for incorporation of cities of the fourth class, which is as follows:

"Special elections may be appointed by resolution of the council, and held in and for the city, or in and for any ward thereof, at such times and place or places as the council shall designate; the purpose and object of which shall be fully set forth in the resolution appointing such election."

For defendant it is contended that the submission of that question to the electors of the third ward was at most for advisory purposes in the nature of a "straw

vote," as generally talked and understood at the time, the result not legally binding upon that council or its successors, that the section under which it is claimed to be of legal force antedates by many years section 323 of the special charter of Ypsilanti, which is strictly local in character, regularly adopted by the electorate pursuant to constitutional authority and provisions of the home rule act. This section took effect April 10, 1913, and is as follows:

"SECTION 323. The common council shall have power to assess and levy a tax to pay the expenses of making, grading, paving, opening, widening and repairing streets, lanes and alleys, and for the construction of and putting curb stones, curbing, gutters and culverts therein and other local improvements, upon the lots, premises, lands and tenements in said city, which, in the opinion of the common council of the said city, are benefited by such improvement, or by a general tax, or part by local or special tax, as said common council may deem proper, provided, however, that no more than 25% of the said improvement shall at any time be assessed by the general tax of the city."

The only legal question which this scant record and counsel's briefs present and discuss is whether the city council by appointing and holding this so-called special election, and its result, is shorn of the discretionary taxing and assessing power conferred upon it by the city charter and bound to the course indicated by the proposition submitted to the electors of the third ward and affirmed by a majority of those voting on the question, but not by a majority of those voting at that election.

The authority to order and direct paving and other improvements of the city's highways, and the power of taxation to raise funds for that and other municipal purposes rests in the city council. The council cannot by resort to a "special election" under the statute referred to shirk that duty, delegate its authority

and divest itself of, or restrict, its taxing power conferred by charter, in the absence of some express provision to that effect. We are cited to no precedent to support the proposition that it can, beyond this general statute authorizing the council to appoint special elections by resolution. A "special election" not otherwise qualified in its authorization, is generally recognized to be, and defined as, an election to fill a vacancy in some office arising by death of the incumbent or other disqualifying cause, or an election for some particular emergency. (Black's Law Dictionary.) There was no vacancy in office or emergency in the case, or anything out of the ordinary. Lathers, the alderman who bethought this plebiscite, testified that when he talked with members of the council about assessing the cost in a different manner than had been customary, "the objection was raised at once that it had never been done that way, and of course we wanted the opinion of the people of the ward," and stated he had said to Mr. Gaudy (a supervisor) and Mr. Worden (an alderman) "that in offering the resolution, I did not consider it binding on the council, that I had supposed it was a straw vote." When asked if he offered it with the object in view of having the ward pay all over 8% of the assessed valuation, he replied, "I don't think that was quite my object," but had he remained on the council it was his intention "to have some proposition of that sort." Under shown conditions and the usual custom as to those special assessments the question prepared by him and submitted is indicated to have been somewhat uncertain if not misleading. His attention being called to the custom of requiring the city at large to pay 25% of the cost of paving, he said, "Yes, I meant that part should stay exactly as it was." Mr. Gaudy, the supervisor of that district and an active witness for plaintiffs, who had expounded his views upon the subject and stated that

it was part of the charter for the city to pay 25%, was asked and answered:

"*Q.* You think they intended the 25% should be paid by the city at large?
"*A.* Certainly, they always have. I don't know why there should be an exception in this case."

With such interpretation of this question by city officials who claim to have given the matter special attention and are presumed to have a better understanding of it than the casual voter, it is not an unreasonable inference that the question failed to convey a clear understanding to the electors of the proposed method of paying for the paving. The wisdom or purpose of propounding the question in that form to the electors of the ward is not altogether clear, but it is clear in our opinion that neither such course nor the answering vote could operate to suspend the provisions of a city charter imposing upon its legislative body the exclusive duty to apportion, assess and levy such special taxes according to its independent, final judgment, "as said council may deem proper," in the manner and within the limits prescribed. The council at no time by any resolution or order changed its original determination of August 17, 1915, as to the method of apportioning and assessing the cost of paving those two streets. It subsequently decided upon a different and better pavement, as is claimed, and after the same was laid directed that the cost should be apportioned and assessed as originally proposed, and as was customary.

The city of Ypsilanti was early incorporated by legislative enactment and its special charter has been perfected by revision and amendment from time to time. It was revised as early as 1877, extensively amended by Act No. 400 of the Local Acts of 1881, and further amended in certain particulars at several sessions of the legislature since then. As amended

in 1881 full plenary power and discretionary authority is conferred upon the common council by sections 164, 165 and 166 in the matter of paving and improving its streets, and determining within specified limits the apportionment of costs therefor. The more recent section 323, before quoted, is along similar lines and but slightly changes, or modifies, the older provisions, amongst other things making plain that not more than 25% of such improvements can be imposed upon the city at large. Along similar lines and under the same sub-title (*Cost of Improvements — Special Assessments*) as chapter 24 of the general law for incorporation of cities of the fourth class (1 Comp. Laws 1915, § 3106 *et seq.*), sections 199 to 224 of defendant's charter prescribe in detail, with the usual safeguards for notice, review, etc., the proceedings for levying and collecting special assessments. Nowhere amongst these many provisions on the subject, nor anywhere in the charter, is there any authority for the council to delegate its legislative powers and relieve itself of the duties imposed upon it by the fundamental law of the municipality, as is claimed to have been done here.

That being the only question fairly presented for determination by this record, the decree of the lower court is reversed and plaintiff's bill of complaint dismissed with costs to defendant.

BIRD, C. J., and MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.