Argued January 27, affirmed March 3, 1925.

## J. E. NORTON v. COOS COUNTY et al.

(233 Pac. 864.)

**Counties—Road Bond Election Held at Time of General Election Held a "Special Election," and Another Special Election During Same Year was Unauthorized—"Year" Defined.**

1. The only election authorized within scope and title of Laws of 1913, page 170, relating to special elections to determine issuance of bonds and warrants, being special elections, a road bond election, though held on same day as general election was nevertheless a "special election" within meaning of Section 11, providing that "only one special election shall be held in one county in any one year," a subsequent road bond election during same year was unauthorized and void; the term "year" in Section 11 meaning calendar year, in view of Section 718, Or. L.

**Elections—"Special Election" and "General Election" Distinguished.**

2. In determining whether an election is special or general, regard must be had to subject matter as well as date of election,

---

2. See 9 R. C. L. 978.

and, if an election occurs throughout state uniformly by direct operation of law, it is a "general election," but, if it depends on employment of special preliminary proceeding peculiar to process which may or may not occur, and the election is applicable only to a restricted area less than whole state, it is a "special election."

From Coos: JOHN C. KENDALL, Judge.

Department 1.

[AFFIRMED.

For appellants there was a brief over the name of *Mr. Ben S. Fisher* with an oral argument by *Mr. J. M. Devers.*

For respondent there was a brief and oral argument by *Mr. C. R. Wade.*

BURNETT, J.—This is a suit to enjoin Coos County, its commissioners and officers from issuing road bonds in the sum of $280,000, said to have been authorized by special election held in that county August 28, 1924. The history of the matter is substantially as follows: On April 5, 1924, the County Court of that county, of its own motion, made an order calling for an election to be held May 16, 1924, that being the date of the general primary election held throughout the state. The proposition submitted at that election was for bonds in the sum of $375,000 to be applied in different amounts to five highways and a certain public bridge in the county, and the vote was adverse to the issuance of bonds. On August 6, 1924, acting upon a petition of registered voters said to compose one twentieth of the greatest number of votes cast in the county at the next previous general election for judge of the Supreme Court, the County Court called a special election to be held on August 28, 1924, at which time

the question to be voted upon was whether bonds in the sum of $280,000 should be issued and applied in different amounts to the construction of four roads named in the order. The two propositions differed both in amounts to be raised and in the purposes to which the proceeds of the bonds should be applied. The vote at the election in August was in favor of the issuance of bonds in the amount of $280,000.

The complaint recites the proceedings leading up to the two elections and goes on to aver that the county authorities are threatening and intending to issue the bonds. Claiming that their intended procedure is without authority, the plaintiff prays, in substance, that the officers and the county be perpetually enjoined from the contemplated action. A demurrer to the complaint was overruled. The defendants stood upon their demurrer and have appealed from the ensuing decree enjoining the issuance of the bonds.

The proceedings were conducted under the act of February 25, 1915, embodied in Chapter 103 of Laws of 1913, and Chapter XIII of Title XXX of 2 Oregon Laws. The title of the act is as follows:

"To authorize the county courts of the State of Oregon to issue and sell bonds or county warrants of the county for the purpose of building and maintaining permanent highways within the respective counties, and to provide a sinking fund for the purpose of retiring the bonds at maturity; to authorize the several counties of the State of Oregon to hold special elections for the purpose of submitting to the voters of the county the question of the issuance of bonds and warrants; and generally to provide a complete manner of procedure for the issuance of county bonds for the purpose of the building, construction and maintenance of permanent highways."

The first section contains authority for issuing bonds by a county as provided in the act for the purpose of constructing and maintaining permanent roads. Section 2 is mandatory upon the County Court to call a special election and submit to the voters of the county the question of issuing bonds, whenever a number of registered voters of the county equal to one fourth of the greatest number of votes cast in that county at the next preceding general election, for judge of the Supreme Court, not exceeding 5,000 registered voters, petition to that end. Section 3 provides a form of petition and certain requisites for signing the same. Section 4 lays down the rule about canvassing the petition and determining its validity. Section 5 is to the effect that whenever one twentieth of the registered voters shall petition the County Court, that tribunal may, in its discretion, call a special election. In Section 6 certain requirements respecting the notice of such elections are described. Section 7 specifies procedure about the number of ballots, judges and clerks of election. Section 8 reads thus:

"Only one special election shall be held in any county in any one year."

Section 9 declares that on the petition of one tenth of the registered voters, computed as before,

"the county court shall take the same action respecting such petition as provided for in Section four (4) of this act, except that instead of calling a special election as therein provided, it shall submit the question to the voters of the county at the next general election."

Under this section it is requisite that the petition be submitted to the County Court at least twenty days before the date of the next general election. Finally, on the subject of elections, Section 10 says

that the County Court of its own motion may submit the question of issuing bonds for the purpose mentioned in Section one (1) of the act at any general electon, requiring that the order of the County Court shall be entered in the journal at least forty days next preceding any general election. Section 11 says in part that:

"If at any general or special election as provided for in this act a majority of the voters voting at such an election shall vote in favor of issuing such bonds, the County Court shall enter an order in its journal declaring that fact."

The plaintiff contends in effect that both the elections held on this subject, the one in May and the other in August, were special elections and the one held in May exhausted the power of the court to order another, because the statute says that

"Only one special election shall be held in any county in any one year."

We take it that the term "in any one year" refers to the calendar year. Generally all taxation is referable to the calendar year, beginning with the 1st of January of each year and ending with the 31st of December of the same year. Such we deem to be ordinarily the meaning of the phrase, and we conclude that the term has been used in its primary and general acceptation: Or. L., § 718.

1, 2. Reduced to its lowest terms, the question is whether the election held in May on the date of the general primary election was a special election. The only authority for ordering an election at all on this subject is found in Chapter 103 of the Laws of 1913, *supra*. The scope of the act, as in all other cases, is measured by its title, and the only authority for an election is prescribed there in these words:

"to authorize the several counties of the State of Oregon to hold special elections for the purpose of submitting to the voters of the county the question of the issuance of bonds and warrants."

It thus appears that there is no authority for anything else but a special election on that question.

In *Marsden* v. *Harlocker*, 48 Or. 90 (85 Pac. 328, 120 Am. St. Rep. 786), Mr. Justice MOORE was considering the former local option law relating to the sale of intoxicating liquors. Under that law an election in any county or subdivision thereof could be held only on the date of a general election throughout the state. In other words, the date of a local option election by the terms of that statute necessarily coincided with the date of the general election held throughout the state. In the decision of that case it is said:

"In all general elections, the time, place and manner of holding which are prescribed by law, the rule is well settled that electors must take notice thereof, and as a corollary to this legal principle any requirement for the issuing of proclamations or the giving of other notice in respect to such elections must be treated as directory only. * * In the case of special elections, however, all the statutory requirements as to proclamations or other means of giving notice are considered as mandatory and must be observed in order to render the vote of the electors participating therein valid. * *

"The reason for this rule rests upon the doctrine that suffrage is a valuable civil right, to the exercise of which each qualified person is entitled, and he must be given or charged with notice as to when, where and for what purpose he is to vote. If, by operation of law, the election invariably occurs at stated intervals, without any superinducing cause, except the efflux of time, the election is general, in which case all qualified persons are presumed to have knowledge

thereof, and hence the failure of any officer or person upon whom the duty devolves to give a prescribed notice does not invalidate the votes cast thereat. Where, however, some local project may be initiated by petition or other means, an election to determine whether such proposition shall be adopted is special, and the electors cannot be presumed to have knowledge of an application of the power which calls for the necessity of exercising the electoral franchise, in which instance a compliance with all the statutory requirements in respect to the performance of the conditions precedent is mandatory in order to validate the election.''

The reasoning by which the learned Justice reached the conclusion that a local option election, although uniformly held on the same day that a general election was held throughout the state, was still a special election, applies with equal force to the present contention. This settled definition of what constitutes a special election was promulgated long before the enactment of the statute under which the proceeding here in question was begun, and in construing that act upon the subject of county road bonds, we may safely presume that the legislators had in mind the definition of the term already enunciated by the judicial department whose duty it is to construe the enactments of the legislative branch of the government, and used it in that sense.

Moreover, in *Wilson* v. *Wasco County,* 83 Or. 147 (163 Pac. 317), this court had under consideration this very act, and there held that, although an election under it was appointed to be held on the same day by the same officers as a general election for choosing public officers, yet the road bond election was a special election. Mr. Chief Justice McBRIDE delivering judgment said:

"The election, although held on the same day as the general election, was special in character. It was not called or held in pursuance of those general statutes which provide for biennial elections for the purpose of choosing public officers, but was called by order of the County Court. Special election notices were posted separately from the notices of the regular election, and its only relation to the general election arises from the fact that the measure was placed, for the sake of economy and convenience, upon the general ballot; and that in accordance with Section 7 of the act the judges and clerks of the general election canvassed the returns and counted the votes. Called as it was for a special purpose by a special order and by a separate and special notice, we are of the opinion that it was a special election for the purpose of voting on the question of issuing bonds."

Precedents are there cited as follows: *Howland* v. *Board of Supervisors*, 109 Cal. 152 (41 Pac. 864); *Fox* v. *City of Seattle*, 43 Wash. 74 (86 Pac. 379, 117 Am. St. Rep. 1037); *State* v. *Blaisdell*, 18 N. D. 31 (119 N. W. 360); all directly sustaining the proposition that such an election is a special election. Regard must be had to the subject matter as well as the date of the election. Time of holding it is not necessarily conclusive of whether the election is special or not. The principle is, that if an election occurs throughout the state uniformly by direct operation of law it is a general election. On the other hand, if it depends upon the employment of some special preliminary proceeding peculiar to the process which may or may not occur, and the election is applicable only to a restricted area, less than the whole state, it is a special election.

A contrary construction making the May election in this instance a general election and the August elec-

·tion the only special election held during the year of 1924 would lead to a result directly contrary to that brought out by the opinion of Mr. Justice McBRIDE in *Wilson* v. *Wasco County, supra.* There, the contention was that although at the election which was held at the same date and by the same officers as the general election, there was a total of 3,129 votes on the question of issuing bonds, a majority of which were in favor of the bonds, there was not a majority of the total votes cast at the election for certain officers, for instance, for district attorney 4,351 votes; for sheriff, 4,285 votes, etc. We recall the language of Section 11 of the act:

"If at any general or special election as provided for in this act a majority of the voters voting at such an election shall vote in favor of issuing such bonds," etc.

If then, the bond question becomes a part of the general election because voted upon at the same date, its adoption would require "a majority of the voters voting at such an election." The opinion in *Wilson* v. *Wasco County, supra,* avoided that effect of this language by holding that a road-bond election held on the same date with a general election was nevertheless a special and not a general election. If therefore, in *Wilson* v. *Wasco County, supra,* such an election was a special election within the meaning of this act, it was likewise a special election in May, 1924, in Coos County, and that exhausted the power of the County Court, restricted as it is by the statute which says:

"Only one special election shall be held in any county in any one year."

In brief, the only elections authorized within the scope and title of the act are special elections. Our

own precedents construe such elections, whenever held, to be special elections, but one of which can be held in any one year. A good reason for this construction, in addition to the title of the act, is found in protection of the taxpayer. Having been called upon once to determine such a question, he may rest secure that no other like attempt will be made upon his resources within the current year. There was no authority for the election in August, 1924, which affected to authorize the bond issue in question.

The decision of the Circuit Court overruling the demurrer to the complaint was correct and its decree is affirmed. AFFIRMED.

McBRIDE, C. J., and RAND and COSHOW, JJ., concur.