333 P.2d 1051

George E. JOHNSTON, Appellant,

v.

BOARD OF EDUCATION OF PORTALES MUNICIPAL SCHOOL DISTRICT NO. I, ROOSEVELT COUNTY, New Mexico, and D. B. Stone, C. B. Vardeman, J. R. Hargis, L. V. Ellison and Cress Ingle, as the Members Constituting Said Board, Appellees.
No. 6430.
Supreme Court of New Mexico.
Dec. 24, 1958.
Rehearing Denied Jan. 9, 1959.

Smith & Smith, Fred C. Tharp, Clovis, for appellant.

Mears & Mears, Portales, for appellees.

Fred M. Standley, Atty. Gen., Alfred P. Whittaker and Fred M. Calkins, Jr., Asst. Attys. Gen., amici curiae.

SADLER, Justice.

The plaintiff, who is appellant in this Court, seeks on a review by appeal, to reverse the judgment of the district court of Roosevelt County, dismissing his complaint wherein he sought to enjoin the Board of Education and the individual members constituting the personnel of said board from issuing school bonds in the sum of $350,000 pursuant to a special school bond election held in Portales Municipal School District No. 1, Roosevelt County, on February 17, 1957.

Counsel for the plaintiff (and the parties will be designated here as they were below) presents his case under two points, first contending that the ballot used in the special election presented a dual proposition contrary to the authority of art. IX, Section 11, of the State Constitution; and, second, that the court erred in ruling as a matter of law that voters at a special school bond election are not required to be registered, the plaintiff offering to make proof that 105 persons voting in said election were not registered.

In the special school bond election called to pass upon this bond issue the question to be voted upon was submitted to the electorate in the following form, to wit:

"Official Ballot

Bond Election for Portales Municipal School District No. 1, Roosevelt County, New Mexico

February 19, 1957

For the Issuance of Bonds

of Portales Municipal School District No. 1, Roosevelt County, New Mexico, in the total sum of $350,000.00, for the purpose of erecting school buildings and of purchasing school sites in said district _____☐

Against the Issuance of Bonds

of the Portales Municipal School District No. 1, Roosevelt County, New Mexico, in the total sum of $350,000.00, for the purpose of erecting school buildings and of purchasing school sites in said district ____☐"

The proposition submitted to the electorate carried by a majority of 45, that is 783 persons voted for the proposition and 738 against it. The plaintiff says that for purposes of this appeal it must be considered as true that the 105 persons named by plaintiff as having voted in said election and as not being registered voters were not in fact registered voters. Also, it may be taken as shown that the Board

intended to use the money, or a portion of such proceeds, not only for buildings presently to be constructed but, as well, to construct some buildings in the future and for the Board permissibly to purchase two or more school sites.

Article IX, § 11, of the Constitution provides:

> "No school district shall borrow money, except for the purpose of erecting and furnishing school buildings or purchasing school grounds * * *."

Counsel for the plaintiff seem to think the use of the word "or" in this constitutional proviso, as distinguished from the conjunctive "and," is a circumstance of special significance. We see nothing peculiarly noteworthy in the framers of the provision making this use of the word "or." Had they not done so, and had chosen its counterpart "and," are we to suppose the Board would then, each time it became necessary to seek funds for a new school building to have to put the proposition thus, "to purchase sites *and* erect school buildings," even though no site was necessary? Conceivably, if the Board did so submit the question, then the proceedings could be challenged because its form involved a deception and was actually false. In 43 Am.Jur. 346, § 92, the author states:

> "A proposition to purchase a site and erect a public building thereon submitted to the voters, contains only a single proposition."

In Board of Education of Pittsburg, School Dist. No. 49, v. Davis, 120 Kan. 768, 245 P. 112, 113, the court was dealing with the claimed duality of a bond proposal. The court said:

> "If the argument of the defendant were correct, every proposition submitted for adoption would have to be separated into its last details. This is not the intention of the law. It intends that a single question as a whole shall be submitted as a whole. Here was a question of providing proper school facilities—one proposition, and it was properly submitted as such."

A good statement of the rule is found in Buhl v. Joint Independent Consolidated School District No. 11, 249 Minn. 480, 82 N.W.2d 836, 838. The court made this pronouncement, to wit:

> "The general rule gleaned from the authorities is that in order to constitute a single proposition or question there must exist a natural relationship between the objects covered by the ballot so that they form but one rounded whole or single plan."

See, also, Inslee v. City of Bridgeport, 153 Neb. 559, 45 N.W.2d 590, and annotations of the subject in 5 A.L.R. 538 and 4 A.L.R.2d 617 (621). Cases from our own jurisdiction dealing with the same

subject are City of Albuquerque v. Water Supply Company, 24 N.M. 368, 174 P. 217, 5 A.L.R. 519, and White v. Board of Education, 42 N.M. 94, 75 P.2d 712. The cases of Dickinson v. Board of County Commissioners, 34 N.M. 337, 281 P. 33, and Carper v. Board of County Commissioners, 57 N.M. 137, 255 P.2d 673, are easily distinguishable on their facts.

Although Carper v. Board of Education, supra, is distinguished on its facts along with the Dickinson case, it is significant that we had the following to say in the Carper case touching a distinction between Const., art. 9, § 11, involved in the case of White v. Board of Education, supra, and in the present case, and Const., art. 9, § 10, involved in Carper v. Board of Education, supra [55 N.M. 137, 255 P.2d 677]. We said:

"Aside from the foregoing distinction there appears to us a still further differentiating feature. The provisions of the New Mexico constitution involved in the two cases are not the same. N.M.Constitution, Article 9, Section 11, which was involved in the White case, insofar as it is pertinent here reads as follows:

" 'No school district shall borrow money, except for the purpose of erecting *and furnishing school buildings or purchasing school grounds,* and in such cases only when the proposition to create the debt shall have been submitted to a vote of such qualified electors of the district as are owners of real estate within such school district, and a majority of those voting on the question shall have voted in favor of creating such debt. * * *' (Emphasis ours.)

"The provisions of Section 11, involved in the White case, are broader in their scope than the corresponding provisions of Section 10 involved in this case. Section 11 expressly authorizes the use of borrowed moneys for furnishing school buildings or for purchasing school grounds. There is no comparable provision in Section 10 which expressly authorizes counties to use the borrowed moneys only for 'erecting' the public buildings. Section 10 in addition contains an express limitation which is absent from Section 11 in that it specifies that the money may be borrowed for 'necessary' public buildings. Since the word 'necessary' is missing from Section 11, it would appear that perhaps moneys for school buildings could be voted when it appeared 'convenient' or otherwise 'desirable' but not technically necessary. In other words, the difference of language in the two sections of the constitution placed in juxtaposition is suggestive of an intention on the part of the constitution makers

to limit the borrowing power of counties to a greater degree than that of the school districts."

As pointed out in the Carper case, in White v. Board of Education of Silver City, we were spared the necessity of deciding whether the duality there claimed existed, though actually we did not condemn as dual the proposed submission. Furthermore, the Attorney General as amicus curiae points out in his brief that if such duality, in fact, existed it would fall under the ban of 1953 Comp., § 73–8–31, barring any action touching the validity of the petition or the resolution touching same. This we need not determine, seeing no duality.

We come next to a consideration of the plaintiff's second point. In raising this question, the plaintiff lays error at the feet of the trial court in ruling as a matter of law that in a school bond election voters are not required to be registered in order to entitle them to vote, as a result of which ruling the court refused to hear proof that 105 persons voting at the election were not registered. The canvass of the vote cast at the election disclosed that 783 persons voted for the proposed bond issue and 738 voted against it, producing a majority of 45 in favor of the proposal to issue bonds.

In presenting this claim of error counsel quote copiously from chapter 3 on Elec-

tions to support the position they take. They take us first to the definition of the word "election" found in the Election Code as 1953 Comp., § 3–2–5, reading:

"The word 'election' shall be construed to mean and apply to all primary elections, general elections, special elections and municipal elections."

Next, they quote from § 3–2–47 of the same chapter, reading:

"No person shall vote at any election unless registered as herein provided * * *."

and from § 3–2–49, the following:

"No person shall vote at any general, special, primary, or municipal election unless registered as provided by the laws of the state of New Mexico and unless otherwise qualified as herein provided; and no ballot of any unregistered or otherwise unqualified elector or person, shall be cast, counted or canvassed. * * *"

The penal provisions of the Election Code are next called to our attention including, as they do, a penalty against allowing an unregistered voter to vote (§ 3–8–19) as well as the provisions of Article 5 of 1953 Compilation, relating to Offenses and Penalties (§ 3–8–24) reading as follows:

"The provisions of this article 5 (3–8–1 to 3–8–23) shall apply to all

general elections, all special elections, and all primary elections held under the laws of this state, except as amended, changed or modified by the primary Election Code of this state, or except as in conflict therewith."

From the foregoing statutory provisions, plaintiff's counsel readily draw the conclusion that the school bond election in question was either a "municipal election," or a "special election" within the contemplation of governing statutory provisions. They quote several definitions of the words "special" and "special election" to give support to the conclusion they draw. See, State ex rel. Stone v. Andresen, 110 Or. 1, 222 P. 585; Scovill v. City of Ypsilanti, 207 Mich. 288, 174 N.W. 139, and Norton v. Coos County, 113 Or. 618, 233 P. 864.

Counsel then follow the foregoing line of argument with an expanded statement of reasons why if, indeed, the bond election here assailed be not a "special election" within the contemplation of statutes referred to, it truly must come within the meaning of "municipal elections" to which reference is made in some of the cited and quoted statutes. So, say counsel, if there be any legitimate question whether a school bond election may be placed in the category of a "special election" within statutory contemplation as to requirement for registration, there should be none at all as to inclusion of a school bond election within the classification of a municipal election as to

which registration is required, citing sections 3–2–5, 3–2–49 and 3–8–24, being provisos found in the general Election Code.

And, finally, counsel for plaintiff refer to section 3–10–22, (L.1927, c. 41, § 720) exempting application of the Act to elections for issuance of bonds "by cities, towns, villages, counties, school districts, or other municipalities * * *," as proof they claim, that the legislature included counties and school districts within the term "municipalities"; otherwise, they say the phrase "other municipalities" as used in the quoted statute is meaningless. In like fashion counsel quote 1953 Comp., § 6–8–1, classifying "school districts," along with "counties, cities, towns," etc., for purposes of qualifying for federal aid.

Then, after a build up along the lines shown for extending the registration requirements to a school bond election, counsel mention the fact that registration is required of all electors in village, town and city elections, even in school board elections (1953 Comp., § 73–10–5)—so why not in school bond elections? This is but to admit there is no express or specific requirement for registration in a school bond election and an obvious plea for us to provide the requirement by construction.

■ The defendants do not question but that the present election was a "school election" within the purview of Const., art. VII, § 1. The phrase has been so treated

in Klutts v. Jones, 20 N.M. 230, 148 P. 494; and Roswell Municipal School District No. 1, Chaves County v. Patton, 40 N.M. 280, 58 P.2d 1192. It is noticeable, then, that the constitutional proviso mentioned above does not *in terms* require registration as a condition of the right to vote, although it does expressly note a distinction between a school election and other elections. Nevertheless, authority is to be found in the constitution authorizing the legislature to require registration of qualified electors as a qualification for voting. See Const., art. VII, § 1. This circumstance is without significance, however, as counsel for defendants contend, unless it can be shown the legislature has so provided as to this type of election. They assert it has not and a pertinent answer to this inquiry solves the major problem presented by this law suit.

Turning to Const., art. IX, § 11, we find a requirement that a proposition to bond the district for school indebtedness must first be submitted to a vote of such qualified electors of the district as are owners of real estate within the district. In our sister state of Arizona a case came before the Supreme Court in Morgan v. Board of Supervisors, 67 Ariz. 133, 192 P.2d 236, 240, involving a similar constitutional proviso. It was an action by a qualified elector, resident of a certain school district to enjoin a school bond issue on various grounds, among which was one that ex-service men and widows exempted from taxation had been wrongly excluded from voting. The Arizona court in deciding the question, felt the eligibility of voters was governed by this provision of their constitution, somewhat akin to our own, to wit:

"Questions upon bond issues of special assessments shall be submitted to the vote of real property taxpayers, who shall also in all respects be qualified electors of this state, and of the political subdivision thereof affected by such question."

The contention was made that these ex-service men and widows, seemingly otherwise qualified to vote in general elections, if allowed to vote at a school bond election, were so allowed, although not in fact taxpayers. This contention was denied by the Arizona court and in so doing it concluded that the constitutional proviso was *self-executing and mandatory,* and could not be varied by the legislature. Although the statutes on school bond elections required the proceedings to conform with the general election laws, the court was careful to point out that "conformity" did not require "identity."

There is here neither occasion nor necessity for this Court to go so far as did the Arizona court in the Morgan case since there is here no contention that under our constitution the legislature lacks power to interpose registration as a condition to the

right to vote in a school bond election. The only question we must answer is, has it done so? For the reasons heretofore and still to be stated, we think it has not.

■ Almost at the outset, then, we begin our study of the question with an admitted, or, certainly, an incontrovertible fact, that there is no express constitutional or statutory requirement that registration is required as a condition to voting in a school bond election. That he must be an otherwise qualified elector seems equally true. Indeed, ever since its enactment in 1923 and by 1953 Comp., § 73–8–28, it has been provided:

"* * * One ballot shall be delivered to each qualified voter of the district presenting himself to vote, and after he marks the same, it shall be folded by him and placed in the ballot box by the judges of election * * *."

Actually, the foregoing is the only provision found in the statutes relating to the conduct of a school bond election, save certain provisos merely declaratory of constitutional provisions, such as found in 1953 Comp., § 3–1–1, where we find this language conforming the statutes to the constitutional definition of a qualified voter (Const., art. VII, § 1), to wit:

"Every male citizen of the United States, who is over the age of twenty-one years, and has resided in New Mexico twelve months, in the county ninety days, and in the precinct in which he offers to vote thirty days, next preceding the election, except idiots, insane persons, persons convicted of a felonious or infamous crime unless restored to political rights, and Indians not taxed, shall be qualified to vote at all elections for public officers. * * *"

Of course, and as already indicated, this same article and section provided, also, that all school elections should be held at different times from other elections and authorized the legislature to require registration of electors as a requisite for voting. In Roswell Municipal School District No. 1 v. Potter, supra, a discussion of the reason for this requirement is found.

Two other pieces of legislation were enacted subsequent to adoption of the constitution which require notice. Each had a separate origin and they are to be considered with that fact in mind. We look first at those sections of the statutes which relate primarily to school bond elections. They are to be found in 1953 Comp., §§ 73–8–20 through 73–8–40, and appear to have derived initially from L.1923, c. 148, and were a portion of "An Act Relating to Schools and to Codify the Elementary and High School Laws, and to Provide for the Administration and Financial Government of Such Schools." The Act was so entitled. There is to be found neither in the

original session law, nor in the present form of the statute any requirement that electors must be registered to be entitled to vote.

The omission of any such requirement takes on added significance when it is remembered, as the legislature must have recalled, only a few years before this Court in Board of Education of City of Roswell v. Citizen's National Bank, 23 N.M. 205, 167 P. 715, 721, touching the right at that time to vote in a school bond election, had noted that there was no necessity to be registered to vote in such an election. We had said:

" * * * It is thus to be seen that registration of voters is not required in the election of boards of education. Section 1963, which makes it unlawful for a person to vote without being registered, has to do with general, state, and county elections, and has no reference whatever to municipal or school district elections. This being true, the statute is silent upon the question as to whether or not registration of voters is required in elections held to determine the question as to whether or not bonds shall be issued. This being true, it would seemingly follow that in voting upon such questions no additional restrictions, other than were imposed in elections held for school directors, were intended, and this being true, we are compelled

to hold that registration of voters in elections upon the question as to whether or not bonds of school districts shall be issued is not required in municipal school district elections."

If it had been the wish of the legislature to add registration as a requirement for voting, here in this codification of the school laws was a good place to do it. But it made no such requirement.

This was not the first time, however, that an opportune time had presented itself for the legislature so to condition the right to vote in a special school bond election, had it so desired. When the Election Code of 1927 was enacted as Chapter 41, Laws 1927, the legislature dealt extensively with the subject of registration, providing specifically in § 209 (now found as § 3-2-49, as subsequently amended):

"No person shall vote *at any general election* unless registered as herein provided."

Indeed, by a savings clause now appearing as 1953 Comp., § 3-10-22 (originally § 720 of c. 41, L.1927) the legislature had expressly provided that the provisions of the Election Code should not apply to a school bond election. It reads:

"The provisions of *this Act* [chapter] *shall not apply to* elections for justices of the peace, constables, school directors, municipal boards of educa-

tion, officers of irrigation, drainage of [or] conservancy districts, officers of acequias or community ditches, city, town or village officers, or *elections for issuance of bonds* or other evidences of indebtedness by cities, towns, villages, counties, school districts, or other municipalities, unless otherwise provided herein or by the laws governing such elections." (Emphasis added).

Amicus curiae aptly remarks at end of his discussion of the significance of the omission to add registration but adding an exception of it, instead, as to school bond elections that "cursory examination of the provisions of the 1927 Election Code indicates its *whole* thrust was toward the subject of general elections," a conclusion with which we are almost compelled to agree. Certainly, its *primary* thrust was toward general elections. It is quite clear the Election Code itself does not otherwise provide apart from the exception, nor do the laws especially relating to school bond elections do so.

The provision last above quoted, to wit, 1953 Comp., § 3–10–22, stems originally from L.1927, c. 41, § 720, which was a recodification of the laws relating to elections. The act, itself, dealt extensively, especially in some of the provisions of Article II thereof, with the subject of registration. Specifically, it provided in § 209

thereof, as subsequently amended and now found as 1953 Comp., § 3–2–49, reading:

"No person shall vote at *any general election* unless registered as herein provided."

Laws of 1935, c. 147, § 8, made many revisions of the Election Code, amending § 209 by adding the words "or special election" but did not change or amend L.1927, c. 41, § 720. Another opportunity presented itself to do so later when the legislature again in 1939 by Chapter 153 amended certain provisions of the 1935 revision and in so doing amended § 209 of the 1927 Election Code (c. 41, L.1927) adding further language so as to include primary or municipal elections. No effort was made, however, to amend § 720, chapter 41, Laws 1927, the Election Code (now 1953 Comp., § 3–10–22).

Added significance is added to this obvious omission to amend section 720 of chapter 41, Laws 1927, the Election Code, by this language of § 3–1–1 in the very first paragraph of the 1927 Act, reading:

"The provisions of chapter 41, New Mexico Statutes Annotated, Compilation of 1929, *and the amendments thereof* and this chapter shall be known as the 'Election Code' and may be so designated in this act and in any legislative act applicable thereto." (Emphasis added).

The foregoing provision in the Election Code enacted in 1927 (Laws 1927, c. 41, § 102) demonstrates that at that time the legislature entertained the view they were enacting an *Election Code,* as a part of which 1953 Comp., § 3–10–20, has survived intact and unamended to the present date by implication or otherwise. Indeed, amendments by implication are not favored. Tondre v. Garcia, 45 N.M. 433, 116 P.2d 584. See, Const. art. IV, § 18.

In the light of the foregoing considerations, the phrase "special elections" found in the Election Code of 1927 as § 209 of L.1927, c. 41 (1953 Comp., § 3–2–49) may very plausibly have referred to elections on proposed constitutional amendments of which some had been held prior to 1927 and following statehood.

Nor are we unduly impressed by the language of 1953 Comp., § 6–8–1(a) defining the term "municipality," also relied upon by the plaintiff, when read and understood apart from the context in which it is found. The Act was one passed to enable cities, towns, villages and every other political subdivision within the state to accept federal aid for the cost of labor and material employed upon any Public Works project undertaken under the provisions of the National Industrial Recovery Act, 48 Stat. 195, enacted by Congress to provide employment in the great depression then prevailing.

It follows from what has been said that the judgment of the trial court is correct and should be affirmed.

It Is So Ordered.

LUJAN, C. J., and McGHEE and COMPTON, JJ., concur.

SHILLINGLAW, J., dissenting.

SHILLINGLAW, Justice (dissenting).

I agree that a proposition to erect a building and purchase a site therefor is a single proposition. However, a proposition for the erection of school buildings and for purchasing school sites—where such proposition means that it is for the immediate construction of a building, and of other buildings in the future, as well as for the purchase of two or more school sites—does, in my opinion, present a dual proposition. Accordingly,

I dissent.