SOUTHEASTERN MICHIGAN FAIR BUDGET COALITION v
KILLEEN

Docket No. 81115. Submitted October 3, 1985, at Detroit. Decided July
21, 1986.

The Detroit City Council adopted a resolution entitled "Advisory
Question Re: More Local Jobs Financed by Reductions in
Military Spending," drafted by the Southeastern Michigan Fair
Budget Coalition, and a resolution entitled "Advisory Question
Re: U.S. Foreign Policy Toward Central America," drafted by
the Michigan Interchurch Committee on Central American
Human Rights (MICAH). Both resolutions were certified by the
city clerk and transmitted to James Killeen, Wayne County
Clerk, as Secretary of the Wayne County Board of Election
Commissioners, for placement on the ballot for the general
election of November 6, 1984. The Wayne County Election
Commission refused to do so, holding that there was no consti-
tutional or statutory authority for placing the resolutions on
the state general election ballot. The Southeastern Michigan
Fair Budget Coalition, MICAH, the Detroit City Council, the City
of Detroit, and Mary Ann Mahaffey, a member of the Common
Council for the City of Detroit, thereafter brought an action in
the Wayne Circuit Court against James Killeen and the Wayne
County Election Commission challenging the authority of the
defendants to refuse to place a certified proposition on the
ballot, and seeking appropriate relief to require both resolu-
tions to be placed on the ballot. The circuit court, Thomas
Roumell, J., ordered that plaintiffs' complaint for mandamus,
injunctive relief and a declaratory judgment be dismissed.
Plaintiffs appeal from that order. Held:

1. MCL 168.689; MSA 6.1689 is properly construed to require
candidates, constitutional amendments, and questions for use
at any state, district or county election to be "properly" certi-

REFERENCES
Am Jur 2d, Constitutional Law §§ 747 et seq.
Am Jur 2d, Elections §§ 204 et seq., 328 et seq.
Am Jur 2d, Municipal Corporations, Counties, and Other Political
Subdivisions §§ 126 et seq.
See the annotations in the ALR3d/4th Quick Index under Ballots;
Elections.

fied before they were entitled to placement on the ballot. The use of the word "properly" evidences an intent of the Legislature that the board of county election commissioners not only determine that a proposed question is certified, but that it is indeed properly certified. Where it is apparent to the board of county election commissioners that the question is not entitled to placement on the ballot, it may refuse to place it thereon and leave the certifying body to its legal recourse. The Court of Appeals interpreted "properly" in this context to mean that the election commissioners are required to determine that, on its face, the question is entitled to placement on the ballot.

2. The Court of Appeals agreed with the circuit court that the questions involved are clearly "advisory" questions in areas with respect to which the city council has no power to act officially.

3. Absent transgressions of the duties set forth in the statutes or city charter, advisory questions are not per se excluded from the ballot.

4. The Legislature has the power, in the absence of a constitutional prohibition excluding such questions, to place advisory questions on the ballot and, therefore, to empower subordinate governmental entities to do so. The Legislature has neither specifically authorized advisory questions to be placed on ballots nor has it specifically authorized advisory questions to be placed on ballots by subordinate governmental units. A grant of such power to the Detroit City Council cannot be inferred from the Michigan Constitution, the provisions of the home rule cities act, or the Detroit City Charter.

5. While advisory questions as such are not necessarily excluded from ballots, in this case neither the Legislature nor the citizens of Detroit have conferred on the Detroit City Council the power to place these advisory questions on the ballot.

Affirmed.

1. ELECTIONS — BALLOTS — PREPARATION OF BALLOTS.

The statute regarding the preparation of election ballots by county election commissioners requires candidates, constitutional amendments, and questions for use at any state, district or county election to be "properly" certified before they are entitled to placement on the ballot; a board of county election commissioners may refuse to place a question on the ballot where it is apparent to the board that the question is not entitled to placement thereon; in this context, "properly" means that the election commissioners are required to deter-

mine that, on its face, the question is entitled to placement on the ballot (MCL 168.689; MSA 6.1689).

2. Elections — Ballots — Advisory Questions.

Advisory questions are not per se excluded from placement on election ballots; however, neither the Legislature nor the citizens of Detroit have conferred on the Detroit City Council the power to place on ballots advisory questions that deal with nothing over which the council has power to act.

3. Constitutional Law — Legislative Power.

The Legislature can do anything which it is not prohibited from doing by the people through the federal and state constitutions.

4. Elections — Legislative Power — Ballots — Advisory Questions.

The Legislature has the power to place advisory questions on election ballots and to empower subordinate governmental entities to do so; however, the Legislature has not specifically authorized the placement of advisory questions on ballots nor has it specifically authorized subordinate governmental units to do so.

5. Elections — Home Rule Cities Act — Ballots — Advisory Questions.

The home rule cities act does not grant the Detroit City Council the power to place on election ballots advisory questions that deal with nothing over which the council has power to act (MCL 117.3, 117.4i; MSA 5.2073, 5.2082).

*Downs, Zagaroli & Downs, P.C.* (by *Tom Downs,* Special Assistant Corporation Counsel, and *Roger F. Lane*), for plaintiffs.

*John D. O'Hair,* Corporation Counsel, and *W. B. McIntyre, Jr.,* Assistant Corporation Counsel, for defendants.

Before: D. E. Holbrook, Jr., P.J., and R. B. Burns and K. B. Glaser,* JJ.

K. B. Glaser, J. Plaintiffs appeal as of right from an order of the Wayne Circuit Court entered

* Circuit judge, sitting on the Court of Appeals by assignment.

October 1, 1984, dismissing their complaint for mandamus, injunctive relief, and declaratory judgment. We affirm.

On July 26, 1984, plaintiff Detroit City Council adopted a resolution entitled "Advisory Question Re: More Local Jobs Financed By Reductions In Military Spending."[1] This resolution was drafted

---

[1]

ADVISORY QUESTION RE: MORE LOCAL JOBS FINANCED BY REDUCTIONS IN MILITARY SPENDING

WHEREAS

Detroit is an economically depressed area, suffering from high unemployment, a severe housing shortage, a continuing crime problem and cutbacks in vital city services, and

WHEREAS

These and other problems can be related to a steady increase in military spending of our federal tax dollars, and

WHEREAS

The Reagan Administration has consistently over the last four years steadily increased the military budget and decreased funding for human services, and

WHEREAS

The amount of money which is currently expended for military purposes could be redirected to create more local jobs in the City of Detroit and the nation. NOW, THEREFORE BE IT

RESOLVED

That in order to obtain such an expression from the electors, an advisory question shall be submitted to the qualified electors of the City of Detroit at the General Election to be held in the City of Detroit, as provided by law, on Tuesday, November 6, 1984, the polls to be opened at seven o'clock in the morning and to continue open until eight o'clock in the evening Eastern Standard Time; and BE IT FURTHER

RESOLVED

That said advisory question be submitted to the qualified electors of

by plaintiff Southeastern Michigan Fair Budget Coalition. A second resolution was entitled "Advisory Question Re: U.S. Foreign Policy Toward Central America."[2] The latter resolution was

the City of Detroit and be printed upon the ballot in the following form:

DO YOU FAVOR REQUIRING THE FINANCE DEPARTMENT TO DO AN ANNUAL REPORT SHOWING HOW SIGNIFICANT REDUCTIONS IN MILITARY SPENDING, FINANCED BY OUR DETROIT PORTION OF FEDERAL TAXES, WOULD CREATE LOCAL JOBS AND JOB TRAINING PROGRAMS TO IMPROVE HEALTH, SOCIAL SERVICES, CRIME CONTROL, MENTAL HEALTH, HOUSING AND PUBLIC TRANSPORTATION FOR DETROITERS?

YES ____                                          NO ____

and BE IT FURTHER

RESOLVED

That before submission of said advisory question to the electors of the City of Detroit, to be voted on by them, the said advisory question shall be published in full together with the official proceedings of this Body at its regular session in at least one issue of the Detroit Legal News, the official newspaper of the City of Detroit, printed, published and circulated in said City; and BE IT FURTHER

RESOLVED

That the above advisory question in full shall be posted in a conspicuous place in each polling place; and BE IT FURTHER

RESOLVED

That the City Clerk is hereby authorized and directed to give such notice as is required by law of such special election and of the registration of electors entitled to participate therein.

2

ADVISORY QUESTION RE: U.S. FOREIGN POLICY TOWARD CENTRAL AMERICA

PEACE WITH JUSTICE IN CENTRAL AMERICA

WHEREAS,

The Michigan Interchurch Committee on Central American Human Rights (MICAH) has proposed an advisory ballot proposal regarding U.S. Foreign Policy toward Central America; and

WHEREAS,

This advisory question is endorsed by a number of prominent Detroit Church leaders from the Baptist, Catholic, Methodist, Episcopal and Lutheran Religious congregations, as well as labor and federal and state government representatives and others; and

WHEREAS,

This body being the Legislative Body of the City of Detroit, desires from the qualified electors of the City of Detroit an expression of whether or not they wish to send a message to the Reagan Administration voicing opposition to the Federal government's policy of military intervention in Central America. NOW THEREFORE BE IT

RESOLVED,

That in order to obtain such an expression from the electors, an advisory question shall be submitted to the qualified electors of the City of Detroit at the election to be held in the City of Detroit at the election to be held on Tuesday, the 6th day of November, 1984; and BE IT FURTHER

RESOLVED,

That said advisory question be submitted to the qualified electors of the City of Detroit and be printed upon the ballot in the following form:

SHALL THE FOLLOWING MESSAGE BE CONVEYED TO THE FEDERAL GOVERNMENT ON BEHALF OF THE CITIZENS OF DETROIT?

PEACE WITH JUSTICE IN CENTRAL AMERICA

WE, THE PEOPLE OF THE CITY OF DETROIT, CALL UPON OUR FEDERAL GOVERNMENT TO CEASE ALL FORMS OF MILITARY ASSISTANCE TO CENTRAL AMERICA AND TO REMOVE ALL OF OUR MILITARY PERSONNEL FROM THE REGION BECAUSE OF MASSIVE HUMAN RIGHTS VIOLATIONS, THE DANGER OF ANOTHER "VIETNAM" WAR, THE DAMAGE SUCH A MISUSE OF OUR TAX DOLLARS DOES TO OUR OWN ECONOMY, AND BECAUSE THE PEOPLE OF THE REGION HAVE A RIGHT TO DETERMINE THEIR OWN FUTURE.

YES( ) NO( )

and BE IT FURTHER

RESOLVED,

That before submission of said advisory question to the electors of the City of Detroit, to be voted on by them, the said advisory question shall be published in full together with the official proceedings of this

drafted by plaintiff Michigan Inter-Church Committee on Central American Human Rights (MICAH). Plaintiff city council adopted that resolution on August 1, 1984.

Both resolutions were certified by the city clerk and transmitted to defendant James Killeen, Wayne County Clerk, as Secretary of the Wayne County Board of Election Commissioners, for placement on the ballot for the general election of November 6, 1984. Pursuant to advice of counsel, defendant Wayne County Election Commission refused to do so, holding that there was no constitutional or statutory authority for placing the resolutions on the state general election ballot. This action was then brought, challenging the authority of defendants to refuse to place a certified proposition on the ballot, and seeking appropriate relief to require both resolutions to be placed on the ballot. The circuit court denied all relief in an opinion filed September 21, 1984.

The first issue is whether the Wayne County Election Commission has the power to refuse to place the resolutions on the ballot for the general election. As noted by the circuit court, plaintiffs contend that the provisions of the state election laws, and specifically MCL 168.646a(2); MSA 6.1646(1)(2), do not to any extent or degree grant

Body at its regular session in at least one issue of the Detroit Legal News, the official newspaper of the City of Detroit, printed, published and circulated in said City; and BE IT FURTHER

RESOLVED,

That the above advisory question in full shall be posted in a conspicuous place in each polling place; and BE IT FURTHER

RESOLVED,

That the City Clerk is hereby authorized and directed to give such notice as is required by law of such election and of the registration of electors entitled to participate therein.

any authority for evaluation by the county clerk as to the purpose, legality or object of any question certified to the clerk for inclusion in the printing of ballots for any general election. We hold that the relevant statute does give some power to the election commission beyond the mere form of the certification.

MCL 168.646a(2); MSA 6.1646(1)(2) is not directed at that issue. It is concerned with the timing of the certifications and the persons to whom the certifications are to be made. The preparation of the ballots is provided for by MCL 168.689; MSA 6.1689:

> The board of election commissioners of each county shall prepare the official ballots for use at any state, district or county election held therein, and shall have printed a sufficient number of ballots containing the names of all candidates *properly* certified to said board of election commissioners, and ballots for all proposed constitutional amendments or other questions to be submitted at such election to supply each election precinct in such county with a sufficient number for such precinct, and not less than 25% more than the total number of votes cast therein at the corresponding election held 4 years previous for the office which received the greatest number of votes. [Emphasis added.]

While the language of the statute is not entirely clear, we see no reason for the Legislature to distinguish between *candidates* who are to be "properly certified" and *constitutional amendments* or *other questions* which have to be so certified. We therefore construe the statute to require *candidates, constitutional amendments,* and *questions* for use at any state, district or county election to be "properly" certified before they are entitled to placement on the ballot. Since

this statute is directed to the board of election commissioners, the use of the word "properly" evidences an intent of the Legislature that the board of county election commissioners not only determine that a proposed question *is* certified, but that it is indeed "properly" certified. Accordingly, where it is apparent to the board of county election commissioners that the question is not entitled to placement on the ballot, it may refuse to place it thereon and leave the certifying body to its legal recourse. We interpret "properly" in this context to mean that the election commissioners are required to determine that, on its face, the question is entitled to placement on the ballot.

The second issue is whether the resolutions to be placed on the ballot would constitute submitting advisory questions to the voters. Plaintiffs contend that they are not advisory questions, and summarize their arguments succinctly in their brief:

> The City Council of Detroit has the right to implement its obligations under the balanced budget provision of the City Charter and the Declaration of Rights provision of the City Charter by having the voters vote directly as a means of supporting the City Council in its findings, which then would give the City Council additional "leverage" in any communications with members of the Legislative and Executive branches of the federal government.

We agree with the circuit court that the questions involved are clearly "advisory" questions, since their passage by an affirmative vote of the electorate would not, per se, have the force of law or require action by the city council.

Possibly more important, however, is that they are advisory questions in the areas of federal military intervention in Central American and

federal military spending, with respect to which the city council has no power to act officially. While the city council may petition the federal government in the matters of federal military spending and federal military intervention in Central America, it has no power to affect decisions in those areas beyond that of any other citizen or group of citizens. The questions are therefore advisory in the commonly accepted definition of that term.

Plaintiffs contend that to refuse to permit these resolutions to be placed on the ballot somehow deprives them of their right of petition. We know of no constitutional provision or case law holding that the right of petition includes the right to place anything *on the ballot* that a citizen or group of citizens might wish to say to their government.

Having determined that these resolutions propound advisory questions and, further, that such advisory questions deal with nothing over which the certifying authority has any power to act effectively, except as any other citizen might act, we turn to the question of how this affects the outcome of the case.

We find nothing in the constitution or statutes of the State of Michigan that specifically prohibits advisory questions. There *is* case precedent holding that the city council may not place propositions on the ballot that shift to the electorate the responsibility for making decisions that they themselves are required to make. See *Scovill v Ypsilanti,* 207 Mich 288; 174 NW 139 (1919). Absent such transgressions of the duties set forth in the statutes or city charter, this Court concludes that advisory questions are not per se excluded from the ballot.

Const 1963, art 4, § 1, vests the legislative power of the state in a senate and house of representa-

tives. The case law makes quite clear the broad nature of Michigan legislative power. The United States Constitution grants limited authority to the federal government to exercise only those powers that have been expressly or impliedly delegated to it. State constitutions, by contrast, serve as limitations on the otherwise plenary power of state governments. *Woodland v Michigan Citizens Lobby,* 423 Mich 188, 210; 378 NW2d 337 (1985). For example, the Legislature has general power to contract unless the constitution contains limitations. *Advisory Opinion on Constitutionality of 1976 PA 240,* 400 Mich 311, 317-318; 254 NW2d 544 (1977). See also *Huron-Clinton Metropolitan Authority v Boards of Supervisors of Five Counties,* 300 Mich 1, 12; 1 NW2d 430 (1942) (legislative power subject only to limitations of federal and state constitutions); *Attorney General v Preston,* 56 Mich 177, 179-181; 22 NW 261 (1885) (possibility of implied prohibitions or limitations on legislative power). The legislative power under the Michigan Constitution is as broad, comprehensive, absolute, and unlimited as that of England's Parliament, subject only to the United States Constitution and the restraints and limitations imposed by the people upon such power by the Michigan Constitution. *Young v Ann Arbor,* 267 Mich 241, 243; 255 NW 579 (1934).

We conclude that the Legislature can do anything which it is not prohibited from doing by the people through the federal and state constitutions. *Attorney General ex rel O'Hara v Montgomery,* 275 Mich 504, 538; 267 NW 550 (1936); *Woodland, supra.* We hold therefore that the Legislature has the power, in the absence of a constitutional prohibition excluding such questions, to place advisory questions on the ballot and, therefore, to empower subordinate governmental entities to do so.

The Legislature, however, has neither specifically authorized the placement of advisory questions on ballots nor has it specifically authorized advisory questions to be placed on ballots by subordinate governmental units. Accordingly, we must examine the constitution and statutes to determine whether such a grant of power to the Detroit City Council can be inferred therefrom.

It is apparent from Const 1963, art 7, § 22 that the constitution favors delegation of power to cities and villages. Consistent with that philosophy, Const 1963, art 7, § 34 provides the rule of construction with respect to grants of such power:

> The provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor. Powers granted to counties and townships by this constitution and by law shall include those fairly implied and not prohibited by this constitution.

There being no constitutional provision prohibiting advisory questions, the provisions of the home rule cities act, MCL 117.1 *et seq.;* MSA 5.2071 *et seq.,* must be interpreted liberally in favor of the city in determining whether the power to place advisory questions can be fairly inferred from the language used. We conclude that, under the present state of the statutes and the Detroit City Charter, the city has no such power.

The home rule cities act has two provisions relevant to this issue. Section 3 of the home rule cities act, MCL 117.3; MSA 5.2073, provides certain mandatory provisions to be contained within a city charter. With respect to elections, it provides:

> Each city charter shall provide the following:

* * *

(c) For the time, manner, and means of holding elections and the registration of electors.

Construing this liberally in favor of the city, it is entirely possible that the city charter *could* provide for advisory elections as a "means" of carrying out some of the powers given to the city council by statute and city charter. However, even by the most liberal construction, one could hardly conclude that the city council has been authorized by the Legislature to spend public funds in a straw vote in an area entirely outside the powers of the city council, as in this case.

Section 3 of the home rule cities act does not enlarge the *subject matter* on which the city council may exercise power. It only permits it to determine by what "means" it will exercise the powers otherwise granted to it. Therefore, if the city charter so provided, the city council might well decide that an advisory vote on something over which it has jurisdiction would be the proper means of exercising its power. These particular advisory questions, however, clearly fall outside the power of the Detroit City Council and, even if the city charter authorized advisory votes, there is no grant of power from the Legislature to place these particular advisory questions on the ballot. Furthermore, while the Detroit City Charter has complied with the mandate of providing for the time, manner and means of holding elections, it has not provided as one of those means the use of advisory questions on the ballot.

For these reasons, we find no grant of power in MCL 117.3; MSA 5.2073 that could possibly sustain plaintiffs' position that these advisory questions were entitled to ballot placement.

The second part of the home rule cities act

relevant to this issue is MCL 117.4i; MSA 5.2082, one of the sections that sets forth permissible charter provisions. That section provides in part:

Each city may in its charter provide:

* * *

(6) For the initiative and referendum on all matters within the scope of its powers and for the recall of all of its officials.

At the outset, it is apparent that this is specifically limited to matters within the "scope of its power." The city council, having no power with respect to the subject matter of these resolutions, could not under the most liberal interpretation find the power to place advisory questions on the ballot arising from this section.

Moreover, the words "initiative" and "referendum" have been construed by the Michigan Supreme Court:

In *West v Portage*, 392 Mich 458, 465-466; 221 NW2d 303 (1974), the lead opinion by Justice Levin concludes that a right of referendum authorized by the home-rule act extends only to legislative acts:

"We hold that the words 'initiative' and 'referendum' are themselves an implicit limitation on the matters that may properly be the subject of an initiative or referendum, and that the Legislature did not in 1909 intend to confer on the electors of home-rule cities the power to vote on questions not truly legislative in character."

The opinion was signed by three Justices, one Justice concurring in the result. In *Rollingwood Homeowners Corp, Inc v City of Flint*, 386 Mich 258, 268; 191 NW2d 325 (1971), the Court stated that "[t]here is nothing inherently legislative about a decision to acquire real estate." We are of the view that the opinion of Justice Levin in *West*,

*supra,* correctly and adequately treats the governing legal principle and adopt the reasoning and conclusion of Justice LEVIN in part I of *West.* [*Beach v City of Saline,* 412 Mich 729, 730-731; 316 NW2d 724 (1982).]

See also *Citizens Lobby of Port Huron, Michigan, Inc v Port Huron City Clerk,* 132 Mich App 412, 419; 347 NW2d 473 (1984), interpreting a city charter. These resolutions cannot qualify as being truly legislative in character under the most liberal construction and, therefore, are not entitled to be placed on the ballot under the right of initiative granted by MCL 117.4i; MSA 5.2082, the Michigan Constitution, or the Detroit City Charter.

We conclude therefore that, while advisory questions as such are not necessarily excluded from ballots, in this case neither the Legislature nor the citizens of Detroit have conferred on the Detroit City Council the power to place *these* advisory questions on the ballot.

Affirmed.