*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT DAVIS,

        Plaintiff-Appellant,

v

WAYNE COUNTY ELECTION COMMISSION,

        Defendant-Appellee

and

DONALD J. TRUMP,

        Intervening Defendant-Appellee.

FOR PUBLICATION
December 14, 2023
9:35 a.m.

No. 368615
Wayne Circuit Court
LC No. 23-012484-AW

---

ROBERT LABRANT, ANDREW BRADWAY,
NORAH MURPHY, and WILLIAM NOWLING,

        Plaintiffs-Appellants,

v

SECRETARY OF STATE,

        Defendant-Appellee,

and

DONALD J. TRUMP,

        Intervening Appellee.

No. 368628
Court of Claims
LC No. 23-000137-MZ

---

Before: LETICA, P.J., and RIORDAN and CAMERON, JJ.

PER CURIAM.

-1-

In Docket No. 368615, plaintiff Robert Davis ("Davis"), as a registered voter, filed suit in the circuit court, asserting his intent to vote in the Republican primary and challenged the qualifications of former President Donald J. Trump ("Trump") to be placed on the ballot by defendant, the Wayne County Election Commission ("Commission"), and the resulting improper dilution of votes to other qualified candidates if emergency declaratory relief was not granted. Davis claimed that the United States Constitution and state election laws prevented Trump from being included on upcoming election ballots. The circuit court, assumed without deciding that Davis had standing, then determined that summary disposition was proper under MCR 2.116(C)(8) in favor of the Commission because it was not authorized to investigate the qualifications of a presidential candidate. In Docket No. 368628, Robert LaBrant, Andrew Bradway, Norah Murphy, and William Nowling ("plaintiffs") alleged that they were registered voters intending to vote in the 2024 presidential elections. In the Court of Claims, these plaintiffs filed suit against defendant Jocelyn Benson, Michigan's Secretary of State, also challenging Trump's qualification to be placed on the Michigan ballot in light of the United States Constitution and state election law. The Court of Claims denied the request for declaratory relief, deciding that state law determined the placement on an election ballot and that plaintiffs presented a political question that was not justiciable at that time. The actions were consolidated to advance the efficient administration of justice.[1] We address various arguments concerning the placement of Trump as a candidate on ballots for the upcoming 2024 Presidential Primary Election. The two lower courts, the Wayne Circuit Court, and the Court of Claims, rejected Davis's and plaintiffs' challenges in the underlying cases. We affirm in both cases.

## I. FACTS

The background of these appeals lies in the United States Constitution. Section 3 of the Fourteenth Amendment of the United States Constitution, commonly referred to as the Insurrection Clause, states:

> No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

The crux of the cases before us involves Davis's and plaintiffs' claims that Trump engaged in insurrection and is thus subject to the disqualification under this section of the Fourteenth Amendment. The questions largely concern whether Trump may appear on the upcoming presidential primary ballot in Michigan. The underlying suits were brought by Davis and

---

[1] *Davis v Wayne Co Election Comm*, unpublished order of the Court of Appeals, entered November 22, 2023 (Docket Nos. 368615 and 368628).

plaintiffs, registered voters, challenging Trump's qualifications to be placed on the ballot against defendants, the Wayne County Election Commission (the Commission) and the Secretary of State.

## A. MICHIGAN ELECTION LAW

To put the present matters in context, there are multiple statutes that direct actions by county election commissions and the Secretary of State. These statutes emanate from Const 1963, art 2, § 4(2), which provides the Michigan Legislature with the power to "enact laws to regulate the time, place and manner of all nominations and elections, to preserve the purity of elections, to preserve the secrecy of the ballot, to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting." The Legislature has, in turn, enacted the Michigan Election Law, MCL 168.1 *et seq*. Relevant to this matter are several provisions concerning presidential primary elections, which are found in Chapter XXIV of the Michigan Election Law, MCL 168.531 *et seq*., and also MCL 168.689, a statute found in Chapter XXVIII of the Michigan Election Law, MCL 168.641 *et seq*., concerning the ballot preparation process by county election commissions.

MCL 168.614a explains the initial process for identifying candidates to be placed on presidential primary ballots:

> (1) Not later than 4 p.m. of the second Friday in November of the year before the presidential election, the secretary of state shall issue a list of the individuals generally advocated by the national news media to be potential presidential candidates for each party's nomination by the political parties for which a presidential primary election will be held under section 613a. The secretary of state shall make the list issued under this subsection available to the public on an internet website maintained by the department of state.
>
> (2) Not later than 4 p.m. of the Tuesday following the second Friday in November of the year before the presidential election, the state chairperson of each political party for which a presidential primary election will be held under section 613a shall file with the secretary of state a list of individuals whom they consider to be potential presidential candidates for that political party. The secretary of state shall make the lists received under this subsection available to the public on an internet website maintained by the department of state.
>
> (3) After the issuance of the list under subsection (1) and after receipt of names from the state chairperson of each political party under subsection (2), the secretary of state shall notify each potential presidential candidate on the lists of the provisions of this act relating to the presidential primary election.

MCL 168.615a(1) then explains the process for placing candidates on presidential primary ballots, a task given to the Secretary of State:

> Except as otherwise provided in this section, the secretary of state shall cause the name of a presidential candidate notified by the secretary of state under section 614a to be printed on the appropriate presidential primary ballot for that political party. A presidential candidate notified by the secretary of state under

section 614a may file an affidavit with the secretary of state indicating his or her party preference if different than the party preference contained in the secretary of state notification and the secretary of state shall cause that presidential candidate's name to be printed on the appropriate presidential primary ballot for that political party. If the affidavit of a presidential candidate indicates that the candidate has no political party preference or indicates a political party preference for a political party other than a political party for which a presidential primary election will be held under section 613a, the secretary of state shall not cause that presidential candidate's name to be printed on a ballot for the presidential primary election. A presidential candidate notified by the secretary of state under section 614a may file an affidavit with the secretary of state specifically stating that "(candidate's name) is not a presidential candidate", and the secretary of state shall not have that presidential candidate's name printed on a presidential primary ballot. A presidential candidate shall file an affidavit described in this subsection with the secretary of state no later than 4 p.m. on the second Friday in December of the year before the presidential election year or the affidavit is considered void.[2]

The task of preparing and printing ballots for any state, district, or county election falls on county election commissions pursuant to MCL 168.689:

The board of election commissioners of each county shall prepare the official ballots for use at any state, district or county election held therein, and shall have printed a sufficient number of ballots containing the names of all candidates properly certified to said board of election commissioners, and ballots for all proposed constitutional amendments or other questions to be submitted at such election to supply each election precinct in such county with a sufficient number for such precinct, and not less than 25% more than the total number of votes cast therein at the corresponding election held 4 years previous for the office which received the greatest number of votes.

## B. THE LOWER COURT CASES

As noted, two underlying cases are now before us. Again, Docket No. 368615 arises out of a complaint filed by plaintiff, Robert Davis, in Wayne Circuit Court. This complaint, which named only the Commission as a defendant,[3] explained that Davis had requested that the Secretary of State issue a declaratory ruling deciding whether Trump was disqualified from appearing on the presidential primary ballot because he was allegedly disqualified under the Insurrection Clause. The complaint alleges that the Secretary of State had refused the request because the Secretary of State did not believe she had authority to make such a determination. Davis's complaint generally sought a declaration that, in the event the Secretary of State did certify Trump as a candidate for

---

[2] While not relevant to these appeals, MCL 168.615a(2) also provides a process for those not included as potential candidates under MCL 168.614a to appear on the presidential primary ballot via nominating petitions.

[3] The circuit court allowed Trump to intervene as a defendant in the matter.

the upcoming primary election, the Commission had a statutory duty under MCL 168.689 to "determine and declare" whether presidential candidates, including Trump, are disqualified from running for or holding office under the Insurrection Clause. Davis asked that the circuit court further enjoin the Commission from "printing any ballots for the 2024 Presidential Primary Election containing the name of any presidential candidate" whom it found disqualified under the Insurrection Clause. In other words, in the event the Secretary of State continued to refuse to determine whether Trump was disqualified under the Insurrection Clause, Davis asked that the Commission make that determination itself, and requested an order compelling the Commission to do so.[4] The Wayne Circuit Court granted summary disposition and denied the requested declaratory relief, concluding that the Commission had no such authority.

In the Court of Claims, plaintiffs Robert LaBrant, Andrew Bradway, Norah Murphy, and William Nowling filed suit seeking declaratory and injunctive relief against the Secretary of State. The complaint filed in that court contains voluminous allegations concerning Trump's actions before the 2020 Presidential Election, during the time between that election and January 6, 2021, and on January 6, 2021 itself. The complaint alleges that as a result of his actions, Trump "engaged in insurrection," and that as he had previously sworn an oath to support the Constitution of the United States on January 20, 2017, the date he was sworn in as the 45th President of the United States, and that Trump was "disqualified from holding 'any office, civil or military, under the United States.'" The complaint further alleges that Congress had not removed this disability, and that the office of President of the United States was an "office" contemplated by the Insurrection Clause. "Consequently, Donald J. Trump is disqualified from, and ineligible to hold, the office of President of the United States."

The complaint then addresses the Secretary of State's alleged errors. Plaintiffs explained that they, too, had requested the Secretary of State to exclude Trump from both the primary and general election ballots for the reasons explained. But the Secretary of State declined, taking the position that it was not the role of the Secretary of State to make such a determination. The complaint alleges that, contrary to the Secretary of State's position, the Secretary of State had "both the authority and responsibility to determine whether" Trump was eligible to appear on the primary and general election ballots pursuant to MCL 168.614a(1).

Count I of the complaint seeks relief in the form of a declaration that "Trump is disqualified by section 3 of the Fourteenth Amendment, is ineligible to appear on the presidential primary or general election ballot, and has no legal right to appear on that ballot. Plaintiffs are entitled to declaratory judgment to preserve their right to have only eligible presidential candidates on the ballot." Count II of the complaint seeks a permanent injunction against the Secretary of State, enjoining her from placing Trump on either the primary or general election ballots. In their request for relief, plaintiffs sought the following: (1) a declaration "that Donald J. Trump is disqualified from holding the office of President of the United States pursuant to Section 3 of the Fourteenth Amendment to the Constitution of the United States;" (2) a permanent injunction "enjoining the

---

[4] The complaint does not request that the circuit court itself make any determination regarding whether Trump was disqualified under the Insurrection Clause, a point Davis makes clear on appeal.

Secretary of State from including Donald J. Trump on the ballot for the 2024 presidential primary election;" and (3) a permanent injunction "enjoining the Secretary of State from including Donald J. Trump on the ballot for the November 5, 2024, general election as a candidate for the office of President of the United States[.]"

The Court of Claims denied the requested relief without reaching the question whether Trump was disqualified by the Insurrection Clause. Rather, the Court of Claims held that Const 1963, art 2, § 4, MCL 168.614a, and MCL 168.615a direct the actions of the Secretary of State relevant to this matter. Relying on a decision of the Minnesota Supreme Court, which considered a similar challenge in that state, the Court of Claims explained that the presidential primary election is administered by the Secretary of State pursuant to MCL 168.614a and MCL 168.615a, but that the overall function of the primary election was to assist the political parties "in determining their respective presidential candidates . . . ." The Legislature had not crafted any specific prohibitions regarding whom could be placed on primary ballots, "irrespective as to whether the individual may either serve as a general election candidate or ultimately serve as President if elected." Further, the number of steps involved in becoming a party's candidate for President, along with the fact that any such candidate would also have to win the general election, showed that "declaratory relief is not proper, at least at this time." And, the Court of Claims explained, even if Trump were to win the general election, Congress could remove any disability that might be created by the Insurrection Clause. The Court of Claims concluded: "Whether former President Trump even becomes the President-elect is such a future event that plaintiffs cannot demonstrate that their request for a declaratory judgment is ripe at this time."

As a separate, additional reason for concluding that "plaintiffs cannot receive the relief of preventing former President Trump from being placed on the primary ballot,"[5] the Court of Claims held that the case presented a nonjusticiable political question. The Court applied the six factors from *Baker v Carr*, 369 US 186; 82 S Ct 691; 7 L Ed 663 (1962), and concluded that it would be inappropriate for a judicial officer to determine whether Trump was disqualified from holding office under the Insurrection Clause. The Court of Claims held that, given the nature and number of questions that would need to be answered in order to determine whether Trump was disqualified, coupled with the fact that Congress could remove any such disability, it would be inappropriate for a single judicial officer to decide whether Trump was disqualified from holding office under the Insurrection Clause.

Davis filed his claim of appeal from the Wayne Circuit Court's decision on November 14, 2023, and the following day, the plaintiffs filed their claim of appeal from the Court of Claims decision.[6] This Court expedited both appeals and consolidated them on motion, and further

---

[5] While the Court of Claims specifically referenced the presidential primary ballot, we perceive no reason why the Court of Claims' decision would not apply equally to plaintiffs' claims concerning the general election ballot or beyond.

[6] The plaintiffs to the Court of Claims matter also filed a bypass application in the Supreme Court, requesting that the Supreme Court review the matter before a decision by this Court pursuant to MCR 7.305(C)(1). On December 6, 2023, the Supreme Court denied the bypass application

-6-

directed that the appeals be submitted on December 8, 2023, to this panel, without oral arguments. *Davis v Wayne Co Election Comm*, unpublished order of the Court of Appeals, entered November 22, 2023 (Docket Nos. 368615 and 368628). This Court has also permitted the filing of several amicus briefs.[7]

With this background in mind, we address the matters currently before this Court.

## II. DOCKET NO. 368615 (WAYNE CIRCUIT COURT)

In Docket No. 368615, Davis appeals as of right a November 13, 2023 opinion and order which concludes that the Commission does not possess authority under the relevant statutes to investigate Trump's potential disqualification under Section 3 of the Fourteenth Amendment. Finding no error warranting reversal, we affirm.

## A. STANDARD OF REVIEW

The circuit court decided the matter on summary disposition, granting summary disposition pursuant to MCR 2.116(C)(8). We review de novo a trial court's ruling on summary disposition. *Bailey v Antrim Co*, 341 Mich App 411, 421; 990 NW2d 372 (2022). As explained in *Bailey*:

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery. [*Id.* (quotation and italics omitted).]

As the matter ultimately concerns a request for certain declaratory rulings, we note that questions of law relevant to a request for a declaratory judgment are reviewed de novo, while the decision whether to grant declaratory relief is reviewed for an abuse of discretion. *Reed-Pratt v Detroit City Clerk*, 339 Mich App 510, 516; 984 NW2d 794 (2021).[8] Questions of statutory interpretation

---

"because the Court [was] not persuaded that the questions presented should be reviewed by th[e] Court before consideration by the Court of Appeals." *LaBrant v Secretary of State*, ___ Mich ___ (2023) (Docket No. 166373).

[7] *Davis v Wayne Co Election Comm*, unpublished order of the Court of Appeals, entered December 4, 2023 (Docket Nos. 368615; 368628); *Davis v Wayne Co Election Comm*, unpublished orders of the Court of Appeals, entered December 8, 2023 (Docket Nos. 368615; 368628); *Davis v Wayne Co Election Comm*, unpublished orders of the Court of Appeals, entered December 12, 2023 (Docket Nos. 368615; 368628).

[8] Any factual findings underlying a decision whether to grant declaratory relief are reviewed for clear error on appeal. *Reed-Pratt*, 339 Mich App at 516. However, in this case, the questions are purely legal questions of statutory interpretation, and the motion was decided pursuant to MCR 2.116(C)(8), where all factual allegations stated in the complaint are accepted as true. There are thus no relevant factual determinations by the circuit court for this Court to review.

are questions of law that we review de novo on appeal. *Moore v Genesee Co*, 337 Mich App 723, 727; 976 NW2d 921 (2021).

## B. ANALYSIS

### 1. DUTY TO AUTHORIZE THE PRINTING OF BALLOTS

Davis first argues that the trial court erred to the extent that it has held that the Commission does not have the right to authorize the printing of ballots for the presidential primary election. This argument arises from the following statements, contained in the final page of the circuit court's opinion, addressing one of Davis's requests for a declaration:

> [Davis] asks the Court to "[e]nter a declaratory judgment declaring that pursuant to MCL 168.689, Defendant Wayne County Election Commission has a statutory duty to authorize the printing of the official ballots for the 2024 Presidential Primary Election." Notably, MCL 168.689 does not specifically address the preparation and printing of primary election ballots, which are addressed in Michigan Election Law Chapter XXIV. Regardless, to the extent [Davis] seeks a declaratory judgment imposing legal duties on the Election Commission under MCL 168.689 beyond the scope of the plain language of that statute, he has failed to state a claim for which relief may be granted.

Davis takes issue with the second sentence of this passage. He contends it means that the Commission does not, in fact, have the duty to authorize the printing of ballots for the upcoming presidential primary election.

As a general premise, it is true that MCL 168.689 authorizes, indeed requires, the Commission to do what the statute states: "prepare the official ballots for use" in Wayne County, and to "have printed a sufficient number of ballots containing the names of all candidates properly certified to said board of election commissioners," for "use at any state, district or county election held therein . . . ." There is no doubt that the upcoming presidential primary elections will be a state election. See MCL 168.2(g) (defining "election" as "an election or primary election at which the electors of this state or of a subdivision of this state choose or nominate by ballot an individual for public office . . ."); MCL 168.7 (defining the terms "primary" or "primary election" as "a primary election held for the purpose of deciding by ballot who shall be the nominee for the offices named in this act, or for the election by ballot of delegates to political conventions"). See also *Barrow v Detroit Election Comm*, 305 Mich App 649, 671; 854 NW2d 489 (2014) ("It is well established that it is the province of the election commission, not the city clerk, to approve and furnish the ballots to be used in an election").

However, we differ from Davis on the meaning of the circuit court's decision. The circuit court quotes verbatim from Davis's complaint on one form of the relief he seeks: a "declaratory judgment declaring that pursuant to MCL 168.689, Defendant Wayne County Election Commission has a statutory duty to authorize the printing of the official ballots for the 2024 Presidential Primary Election." The circuit court notes, correctly, that MCL 168.689 does not *itself* specifically reference primary election ballots. Rather, it is a general statute that, by its terms, applies to "any state, district or county election held therein . . . ." MCL 168.689. And, as the

-8-

circuit court correctly explains, Chapter XXIV of the Michigan Election Law governs the processes for primary elections. The circuit court's analysis is accurate. It is not reasonable to read the circuit court's opinion as a holding that the Commission does not have a duty to print the presidential primary ballots for Wayne County.

But the court correctly notes that MCL 168.689 does not *itself* specifically discuss the preparation or printing of ballots for the presidential primary election. In other words, MCL 168.689 does not impose any duties concerning presidential primary elections that are different than the duties that are generally imposed for *all* elections contemplated by MCL 168.689. Beyond that, the court simply explains the obvious: that to the extent Davis sought a declaration that would impose duties that cannot be found in the plain language of MCL 168.689, he was not entitled to any such declaration. We fully agree with this assessment. "This Court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Barrow*, 305 Mich App at 663 (quotation marks and citation omitted). And, there is no indication that the Commission has any intent to refuse to prepare or have printed a sufficient number of ballots for the election, as is required by MCL 168.689. We find no error warranting reversal stemming from this portion of the circuit court's decision.

## 2. WHETHER THE COMPLAINT ALLEGES A CLAIM FOR DECLARATORY RELIEF

Davis's second argument is that his complaint states a cognizable claim for declaratory relief, and thus, it was error for the circuit court to grant summary disposition under MCR 2.116(C)(8). Generally, Davis argues that he has standing to bring such a claim because, the Wayne County Election Commission has a duty to independently determine whether presidential candidates are "properly" certified by the Secretary of State under MCL 168.689. He argues that his complaint adequately pleads the existence of an actual controversy sufficient to support a request for declaratory relief. Again, Davis misunderstands the circuit court's decision.

On this point, the circuit court's decision provided:

In sum, under the plain language of MCL 168.689 and MCL 168.567, the Election Commission does not have the authority to investigate a presidential candidate's possible disqualification under Section 3 of the Fourteenth Amendment, or remove the name of a presidential candidate certified by the Secretary of State unless otherwise ordered by a court. Accordingly, Plaintiff's complaint for a declaratory judgment that the Election Commission has a statutory legal duty to undertake the aforementioned actions fails to state a claim for which relief may be granted, and he has failed to establish that he is entitled to an injunction that prevents the Election Commission from printing any ballots for the 2024 presidential primary election containing the name of anyone deemed disqualified under Section 3 of the Fourteenth Amendment.

The circuit court did not hold that Davis lacked standing to seek a declaration. See *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010) ("[W]henever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment"). Nor did the circuit court, as Davis seems to suggest, hold that the

controversy was not sufficiently ripe for Davis to seek a declaration. See *Rose v State Farm Mut Auto Ins Co*, 274 Mich App 291, 294; 732 NW2d 160 (2006) ("The purpose of a declaratory judgment is to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a breach of contract, or to avoid multiplicity of actions by affording a remedy for declaring in expedient action the rights and obligations of all litigants"). In fact, the circuit court specifically expressed that it did have jurisdiction over the complaint because the case was brought against local officials, seeking a declaratory judgment, which the court had the power to render under MCR 2.605.

The question decided below was whether Davis is entitled to the relief he seeks. The circuit court ultimately held that the Commission lacks authority to independently decide whether Trump or any other candidate is disqualified from the office of President of the United States under the Insurrection Clause, and that as such, Davis is not entitled to the relief sought in the complaint. For reasons discussed in the next section, we find no error in the circuit court's resolution of that question.[9]

### 3. THE ELECTION COMMISSION'S PURPORTED DUTY TO DETERMINE WHETHER TRUMP IS DISQUALIFIED UNDER THE INSURRECTION CLAUSE

The primary focus of Davis's circuit court action, and of his appeal, is whether the Commission has a duty, imposed by MCL 168.689, to determine whether Trump is disqualified from holding the office of President of the United States by Section 3 of the Fourteenth Amendment, and on that basis, then refuse to place his name on the primary ballot. Davis also suggests that MCL 168.567 could be a source from which to derive such authority.[10] Again finding no errors warranting relief, we affirm the circuit court's decision in this regard.

Davis's complaint argues that if the Secretary of State does place Trump on the ballot for the upcoming presidential primary election, the Commission must nonetheless independently determine whether Trump is disqualified under the Insurrection Clause and then refuse to authorize the printing of ballots including his name as a candidate if it determines that Trump is disqualified. Davis primarily relies on MCL 168.689, and in particular, the phrase "properly certified" in the statute:

> The board of election commissioners of each county shall prepare the official
> ballots for use at any state, district or county election held therein, and shall have

---

[9] In his brief on appeal, Davis seems to argue that he is entitled to a declaration that the Commission has a duty to prepare and print the ballots—i.e., the question addressed in part II(B)(2) of this opinion. That basic duty was never in dispute, however. Thus, on this particular issue, there is no actual controversy, and thus, no ability to grant declaratory relief. MCR 2.605(A)(1).

[10] In the circuit court, Davis suggested that another source of authority to undertake such an investigation could be derived from 1963 Const, art 11, § 1, which requires the taking of an oath to support the Constitution of the United States. The circuit court rejected this challenge, and Davis has not raised the issue on appeal. It has thus been abandoned. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008).

-10-

printed a sufficient number of ballots containing the names of all candidates *properly certified* to said board of election commissioners, and ballots for all proposed constitutional amendments or other questions to be submitted at such election to supply each election precinct in such county with a sufficient number for such precinct, and not less than 25% more than the total number of votes cast therein at the corresponding election held 4 years previous for the office which received the greatest number of votes. [MCL 168.689 (emphasis added).]

We have previously addressed the meaning of the phrase, "properly certified," and whether it permits a county election commission to make an independent determination regarding whether a ballot question or candidate was "properly" certified. In *Southeastern Mich Fair Budget Coalition v Killeen*, 153 Mich App 370; 395 NW2d 325 (1986), the question was whether resolutions adopted by the Detroit City Council and certified for inclusion on an upcoming election ballot by the city clerk would appear on the ballot. The questions certified by the city clerk were advisory questions (i.e., questions asking the voters for advice about how the City Council should proceed in certain matters). *Id*. at 375-376. On the advice of counsel, the Board of Commissioners refused to place those questions on the ballot, believing that there was "no constitutional or statutory authority for placing the resolutions on the state general election ballot." *Id*. at 376.

The first question this Court answered was whether the Board of Commissioners had authority to refuse to place on the ballot an item that had been certified by the official authorized to make that certification. This Court examined MCL 168.689, and in particular, the phrase, "properly certified," to conclude that the Board of Commissioners had the authority to determine not only whether a candidate, constitutional amendment, or ballot question had been certified, but also whether any of those had been *properly* certified. *Id*. at 377-378. "Accordingly, where it is apparent to the board of county election commissioners that the question is not entitled to placement on the ballot, it may refuse to place it thereon and leave the certifying body to its legal recourse. We interpret 'properly' in this context to mean that the election commissioners are required to determine that, on its face, the question is entitled to placement on the ballot." *Id*. at 378.

The second question addressed by this Court was whether the advisory questions were, in fact, entitled to placement on the ballot. This Court first held that the questions posed were clearly advisory. *Id*. at 378. And, "they are advisory questions in the areas of federal military intervention in Central America and federal military spending, with respect to which the city council has no power to act officially." *Id*. at 378-379. This Court explained that, while no constitutional or statutory authority explicitly prohibited advisory questions, nothing in the relevant statutes represented the Legislature's authorization "to spend public funds in a straw vote in an area entirely outside the powers of the city council . . . ." *Id*. at 382. While an advisory question concerning an area in which the city council had authority to act might be proper, advisory questions concerning topics that clearly fell outside the scope of the city council's powers were not. *Id*. at 382-384. Thus, while advisory questions might be properly placed on the ballot as a general matter, the particular questions at issue could not be placed on the ballot. *Id*. at 384.

Davis argues that the trial court was compelled to follow *Southeastern Mich Fair Budget Coalition*, and particularly, its interpretation of the phrase "properly certified" in MCL 168.689. But there is no indication that the circuit court failed to do so. Indeed, the circuit court's decision

cites and discusses the case, treating it as binding authority. And, the circuit court's ultimate holding is that the questions involved in the present matter do not involve the type of "facial" review contemplated by *Southeastern Mich Fair Budget Coalition*.[11]

There is no support for Davis's contention that the Wayne County Election Commission is authorized to independently determine whether Trump is disqualified under the Insurrection Clause and then refuse to authorize ballots including him as a candidate on that basis. Pursuant to *Southeastern Mich Fair Budget Coalition*, the duty at issue here is to "determine that, on its face, the [candidate] is entitled to placement on the ballot." *Southeastern Mich Fair Budget Coalition*, 153 Mich App at 378. This Court has implied that a "facial" review amounts to a ministerial review. See *Berry v Garrett*, 316 Mich App 37, 45; 890 NW2d 882 (2016) ("Rather, by doing nothing more than the ministerial task of completing a facial review of the affidavits [of identity], defendants would undertake to perform their clear legal duty under § 558(4) to 'not certify to the board of election commissioners the name of a candidate who [had] fail[ed] to comply' with § 558(2)"). And in *Southeastern Mich Fair Budget Coalition*, the review at issue was a purely legal matter, concerning the scope of the City Council's authority. *Southeastern Mich Fair Budget Coalition*, 153 Mich App at 382-384. The review in that case required no fact-finding and no investigation; it simply amounted to reviewing the proposed ballot questions and determining whether those questions were of a sort that were eligible to be placed on the ballot.

Here, in contrast to that case, Davis would have the Commission determine whether Trump is disqualified by the United States Constitution from holding the office of President of the United States, based on evidence that Davis states he plans to submit to the Commission, but which he has not clearly identified or made part of the record, that he believes proves that Trump engaged in acts of insurrection. Presumably, were this to take place, the Commission would act as both a fact-finder, tasked with reviewing whatever evidence Davis presents, requiring a factual determination regarding what that evidence shows,[12] while acting as constitutional law scholars, tasked with interpreting and applying a provision of the Fourteenth Amendment to the United

---

[11] This Court is not bound to follow *Southeastern Mich Fair Budget Coalition*, given that it was decided before November 1, 1990. MCR 7.215(J)(1). But, we have held that, while this Court is not strictly obligated to follow "uncontradicted opinions from this Court decided before November 1, 1990," such decisions are "nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018). In this matter, we decline to expressly endorse the meaning ascribed to MCL 168.689 stated in *Southeastern Mich Fair Budget Coalition*. We need not decide whether that interpretation was correct because, for reasons to be explained, applying that interpretation of the statute ends with the conclusion that the Commission does not have a duty to investigate or determine whether Trump is disqualified from holding office under the Insurrection Clause.

[12] Whether Davis envisions any other party being able to submit evidence before the Commission is unclear. That, of course, could raise questions regarding the due process rights of those affected by any decision.

-12-

States Constitution, the meaning of which is subject to significant debate. As the circuit court explained, the type of review Davis envisions would go far beyond the "face" of the matter.[13]

Davis also suggests that the authority to conduct such a review could be derived from MCL 168.567. This statute states: "The boards of election commissioners shall correct such errors as may be found in said ballots, and a copy of such corrected ballots shall be sent to the secretary of state by the county clerk." Davis cites *Berry* as support. That case, however, shows that the function of MCL 168.567 is not to authorize the type of investigation into the qualifications of a presidential candidate by a county election commission that Davis seeks. In *Berry*, this Court addressed a challenge to affidavits of identity filed by candidates for township trustee and township supervisor. *Berry*, 316 Mich App at 40. Both failed to state in their affidavits of identity their precinct number, a requirement stated in MCL 168.558(2). *Berry*, 316 Mich App at 40. This Court explained that under MCL 168.558(4), the defendants had a clear legal duty " 'not to certify to the board of election commissioners the name of a candidate who [had] fail[ed] to comply' with the requirement, under § 558(2), of duly including the precinct number where the candidate was registered to vote." *Berry*, 316 Mich App at 44, quoting MCL 168.558(4). This Court explained that because the defendants had failed to comply with their clear legal duty under MCL 168.558(4), they then had a clear legal duty to correct "such errors as may be found in the resulting, improper ballots" under MCL 168.567. *Berry*, 316 Mich App at 44.

In other words, MCL 168.567 is a mechanism by which boards of election commissioners must correct errors in ballots that are later found. Nothing in the plain language of the statute suggests or implies that it creates a duty to investigate a highly fact-intensive matter of constitutional law such as is presented by the instant case. Neither does MCL 168.689. And, as will be explained next in further detail in the following sections of this opinion, by placing Trump on the presidential primary ballot, the Secretary of State would be following her statutory mandates. Thus, there is no potential error to be corrected under MCL 168.567.

---

[13] We note that in a suit filed in the state of Colorado, a trial court, after a five-day trial, concluded that Trump did engage in acts of insurrection. *Anderson v Griswold*, Colorado Denver District Court, Docket No. 2023-CV-32577, issued November 17, 2023. Even so, that court declined to hold that Trump was disqualified from holding the office of President of the United States, concluding that the Insurrection Clause did not apply to the office of President of the United States. *Id*. The court's 102-page decision is currently on appeal to the Colorado Supreme Court.

We discuss this decision not because it binds this Court in any fashion, nor do we seek to express any opinion regarding whether the Colorado trial court's factual or legal conclusions were correct. Rather, we note this decision because it provides some context for the degree of review and types of determinations that would seem necessary before one could even begin to answer the question that Davis wishes to have the Commission answer in a purported "facial" review under MCL 168.689. And, one Justice of the Michigan Supreme Court has also indicated that, in order to resolve the issue, a substantial evidentiary hearing would be required. *LaBrant v Secretary of State*, ___ Mich ___ (2023) (Docket No. 166373) (WELCH, J., dissenting).

-13-

Finding no errors in the decision of the Wayne Circuit Court, in Docket No. 368615, we affirm.

### III.  DOCKET NO. 368628 (COURT OF CLAIMS)

In Docket No. 368628, plaintiffs LaBrant, Bradway, Murphy, and Nowling appeal the Court of Claims order which denied these plaintiffs' request for declaratory and injunctive relief. We affirm.[14]

### A.  WHETHER TRUMP IS DISQUALIFIED UNDER THE INSURRECTION CLAUSE

First, plaintiffs assert that Trump is, in fact, disqualified from holding the office of President of the United States pursuant to the Insurrection Clause.  Generally, they argue that the clause applies to the office of President of the United States, and that under the definition of "insurrection" plaintiffs would apply, Trump engaged in insurrection.  They further argue that Trump's words and actions are not protected by the First Amendment.  Plaintiffs add that the Insurrection Clause is self-executing and may be enforced by the judiciary.  Multiple amici curiae briefs concerning these topics have also been filed.

The Court of Claims declined to reach any of these questions, instead deciding the matter on other grounds.  We too decline to reach these issues because, given our analysis in the next section of this opinion, it is unnecessary to make any determinations regarding whether Trump engaged in insurrection or is actually disqualified from holding the office of President of the United States by the Fourteenth Amendment, at least at this time.  See *Pythagorean, Inc v Grand Rapids Twp*, 253 Mich App 525, 527; 656 NW2d 212 (2002)("We will not reach constitutional issues if cases may be resolved on other grounds.").

### B.  RIPENESS AND RELATED ISSUES

Second, plaintiffs contend that the Court of Claims incorrectly held that the Secretary of State and political parties alone determine which individuals appear on the presidential primary ballot.  Plaintiffs assert that voters in Michigan have a right to have only eligible candidates appear on ballots, and to raise eligibility challenges in the courts.  They also argue that the matter is ripe, contrary to the Court of Claims' decision, because plaintiffs challenge Trump's placement on the ballot for the presidential primary election, an election that is only months away.

As this Court explained in *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 545-546; 904 NW2d 192 (2017):

> MCR 2.605 governs a trial court's power to enter a declaratory judgment. The court rule provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other

---

[14] The standards of review applicable to this appeal are largely those identified in Section II(A) of this opinion.  Other standards of review applicable to the Court of Claims' matter will be noted as relevant.

-14-

legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." MCR 2.605(A)(1). The language in this rule is permissive, and the decision whether to grant declaratory relief is within the trial court's sound discretion. *PT Today, Inc v Comm'r of Office Fin & Ins Servs*, 270 Mich App 110, 126; 715 NW2d 398 (2006).

When there is no actual controversy, the court lacks jurisdiction to issue a declaratory judgment. *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 55; 620 NW2d 546 (2000). Thus, "the existence of an 'actual controversy' is a condition precedent to the invocation of declaratory relief." *PT Today, Inc*, 270 Mich App at 127. An actual controversy exists when a declaratory judgment is necessary to guide the plaintiff's future conduct in order to preserve the plaintiff's legal rights. *Shavers v Attorney General*, 402 Mich 554, 588–589; 267 NW2d 72 (1978). "It is not necessary that 'actual injuries or losses have occurred'; rather than 'plaintiffs plead and prove facts which indicate an adverse interest necessitating a sharpening of the issues raised.' " *Kircher v City of Ypsilanti*, 269 Mich App 224, 227; 712 NW2d 738 (2005), quoting *Shavers*, 402 Mich at 589.

"MCR 2.605 does not limit or expand the subject-matter jurisdiction of the courts, but incorporates the doctrines of standing, ripeness, and mootness." *UAW v Central Mich Univ Trustees*, 295 Mich App 486, 495; 815 NW2d 132 (2012). The "actual controversy" requirement "prevents a court from deciding hypothetical issues." *Id*. And that is the core concern addressed by the ripeness doctrine. "The doctrine of ripeness is designed to prevent the adjudication of hypothetical or contingent claims before an actual injury has been sustained. *A claim that rests on contingent future events is not ripe*." *King v Mich State Police Dep't*, 303 Mich App 162, 188; 841 NW2d 914 (2013) (quotation marks and citations omitted; emphasis added). "Hence, when considering the issue of ripeness, the timing of the action is the primary focus of concern." *Id*. (quotation marks and citation omitted). Questions concerning ripeness are reviewed de novo on appeal. *Id*.

We begin by analyzing Michigan's statutory framework as it pertains to presidential primary elections. First, and as the Court of Claims explained, Michigan's statutory scheme makes clear that the Secretary of State's role in the context of presidential primary elections is limited. Only one portion of MCL 168.614a gives the Secretary of State a role in making any decisions at all. This statute begins by directing the Secretary of State to publish a list of individuals generally advocated by the national news media as potential presidential candidates. MCL 168.614a(1). Which sources to review (i.e., exactly what sources represent the "national news media") is not defined, and thus, it appears that the Secretary of State has some discretion to decide from which sources this list should be drawn.

But after that, the Secretary of State's actions are purely administrative. The chairperson of each political party ultimately identifies which candidates are to be placed on the primary ballot, and does so by filing a list of such candidates with the Secretary of State. MCL 168.614a(2). The Secretary of State then publishes that list on the internet. MCL 168.614a(2). The statute gives the Secretary of State no discretion or authority to alter that list, either by adding or removing candidates. Rather, the Secretary of State "*shall* make lists received under this subsection available

-15-

to the public on an internet website maintained by the department of state." MCL 168.614a(2) (emphasis added). As is widely understood, the term "shall" represents a mandatory, and not discretionary, directive. See, e.g., *Lakeshore Group v Dep't of Environmental Quality*, 507 Mich 52, 64; 968 NW2d 251 (2021) ("The term 'shall' indicates that conduct is mandatory").

The Secretary of State's next task is that she "shall notify each potential presidential candidate on the lists of the provisions of this act relating to the presidential primary election." MCL 168.614a(3). Again, there is no discretion, and no decisions to be made. Given the use of the word "shall," if an individual is included on a list of potential candidates filed by a party chairperson, the Secretary of State must provide this notification.

MCL 168.615a then explains the process for placing candidates on the presidential primary ballots. This statute, which is quoted in full at the outset of this opinion, begins with the sentence: "Except as otherwise provided in this section, the secretary of state *shall* cause the name of a presidential candidate notified by the secretary of state under section 614a to be printed on the appropriate presidential primary ballot for that political party." MCL 168.615a(1) (emphasis added). Again, there is no discretion or indication of any decision-making authority. The statute goes on to explain that a notified presidential candidate may file an affidavit stating a different party affiliation, and directs that the Secretary of State "shall" then print that candidate's name on the appropriate primary ballot for that political party. MCL 168.615a(1). Or, if the presidential candidate files an affidavit that states they have no party affiliation, or that their party affiliation is with a party for which a primary will not be held, then the Secretary of State "shall not cause that presidential candidate's name to be printed on a ballot for the presidential primary election." MCL 168.615a(1). And, if the presidential candidate files an affidavit with the Secretary of State stating that they are not a presidential candidate, the Secretary of State "shall not have that presidential candidate's name printed on a presidential primary ballot." MCL 168.615a(1).

As is clear from the above, the Secretary of State's role in presidential primary elections is chiefly that of an administrator. In particular, when it comes to who is or is not placed on the primary ballot, the statutory scheme leaves nothing to the Secretary of State's discretion. As the Court of Claims explained, who to place on the primary ballot is determined by the political parties and the individual candidates.[15]

The Court of Claims relied on the Minnesota Supreme Court's resolution of a similar case in *Growe v Simon*, 997 NW2d 81 (Minn, 2023). There, the court determined that any claim regarding Trump's placement on the general election ballot was not ripe. But the court held that the petitioners' claim *was* ripe to the extent it asked the court to hold that Trump could not appear on the primary election ballot. *Id*. at 82. The court then explained that, with respect to this one ripe question, there was no potential error to correct:

> With respect to the only ripe issue before us at this time, we conclude that under section 204B.44, there is no "error" to correct here as to the presidential

---

[15] The only exception of sorts is that individuals who are not placed on the ballot as part of this process may, by a nominating petition process, gain access to the primary ballot. MCL 168.615a(2). But that process is not implicated here.

-16-

primary election if former President Trump's name is included on the presidential primary ballot after the Chair of the Republican Party of Minnesota provides his name to the Secretary of State, notwithstanding petitioners' claim that former President Trump is disqualified from holding office under Section 3 of the Fourteenth Amendment. The Legislature enacted the presidential nomination primary process to allow major political parties to select delegates to the national conventions of those parties; at those conventions the selected delegates will cast votes along with delegates from all of the other states and territories and choose a presidential candidate who will subsequently appear on general election ballots. See Minn Stat § 207A.11(d) (2022) (explaining that the presidential nomination primary "only applies to a major political party that selects delegates at the presidential nomination primary to send to a national convention"). This is "a process that allows political parties to obtain voter input in advance of a nomination decision made at a national convention." *De La Fuente v Simon*, 940 NW2d 477, 492 (Minn, 2020). Thus, although the Secretary of State and other election officials administer the mechanics of the election, this is an internal party election to serve internal party purposes, and winning the presidential nomination primary does not place the person on the general election ballot as a candidate for President of the United States. As we explained in *De La Fuente*, in upholding the constitutionality of this statutory scheme for the presidential nomination primary, "[t]he road for any candidate's access to the ballot for Minnesota's presidential nomination primary runs only through the participating political parties, who alone determine which candidates will be on the party's ballot." 940 NW2d at 494-95. And there is no state statute that prohibits a major political party from placing on the presidential nomination primary ballot, or sending delegates to the national convention supporting, a candidate who is ineligible to hold office. [*Growe*, 997 NW2d at 82-83.]

The *Growe* court's final paragraph explains:

Because there is no error to correct here as to the presidential nomination primary, and petitioners' other claims regarding the general election are not ripe, the petition must be dismissed, but without prejudice as to petitioners bringing a petition raising their claims as to the general election. [*Growe*, 997 NW2d at 83.]

In this case, the Court of Claims held that as to the general election, the issue is not ripe, and we agree. Before Trump becomes a candidate in the general election, he would first have to prevail in the nationwide primary process, and then be nominated as the Republican Party's candidate for that office at the Republican National Convention. Given the very nature of those processes, the outcome at either of those steps is unknown at this time. To the extent plaintiffs seek an injunction prohibiting the Secretary of State from placing Trump on the general election ballot, the claim is not ripe for adjudication. *King*, 303 Mich App at 188.

Plaintiffs argue that their request for declaratory relief is ripe, and that the Court of Claims' ripeness analysis is flawed, because it mischaracterizes the complaint. According to plaintiffs, "they challenge Trump's eligibility to appear on the *primary election* ballot, now less than three months away . . . ." Thus, plaintiffs contend that the Court of Claims' speculation regarding

-17-

whether Trump would win the primary election, become the Republican Party nominee, or win the general election is irrelevant. We disagree that the analysis as to the general election was irrelevant. Rather, the complaint specifically asks for an injunction prohibiting Trump from appearing on the general election ballot. As such, the Court of Claims did not mischaracterize the complaint or err by addressing that request.

We do agree with plaintiffs to the extent that they argue that their request for an injunction prohibiting the Secretary of State from placing Trump's name on the presidential primary ballot is ripe. While circumstances were different when this matter was filed, and when it was decided in the Court of Claims, at this point, absent judicial intervention of some sort, the Secretary of State will cause Trump's name to be placed on the presidential primary ballot, and that election will be held in the next few months.[16] This claim does not rest on contingencies or uncertainties; at this point in time, it rests on decided facts and the operation of certain statutes. But, like the Minnesota Supreme Court, we conclude that there is no error to be corrected concerning the presidential primary ballots because the Secretary of State must place Trump on this ballot, regardless of whether he would be disqualified from holding office by the Insurrection Clause.

As discussed previously, when it comes to Michigan's presidential primary, applicable statutes limit the Secretary of State's role to that of an administrator of what are internal party elections. There is virtually no discretion left to the Secretary of State in this process. The Secretary of State, rather, follows the directions of the political parties and the candidates themselves. The Secretary of State is *obligated* to place on the presidential ballot those individuals identified by the political parties, unless a candidate files an affidavit saying otherwise. MCL 168.615a(1). Nothing in this framework exhibits any decision-making to be had, at least by the Secretary of State. Michigan's statutes also contain no provisions that prohibit a candidate who is, or may be, disqualified from holding the office of President of the United States from appearing on the presidential primary ballot. In other words, nothing in the statutory framework prevents a political party from placing an individual on the presidential primary ballot who would be disqualified from holding the office, and nothing requires, or even implies, that the Secretary of State can refuse to place an individual on the presidential primary ballot for such reasons.

Contrast that with other areas in which the Legislature *has* incorporated eligibility requirements into Michigan law. See, e.g., MCL 168.51 (qualifications for the offices of Governor and Lieutenant Governor); MCL 168.71 (qualifications for the offices of Secretary of State and

---

[16] The case was filed in late September 2023, before the Secretary of State published a list of individuals generally advocated in the national media as potential presidential candidates. But at this point, the Secretary of State has published that list, as well as the list of candidates identified by the political parties as candidates for President, which includes Trump. See <https://mielections.us/election/candlist/2024PPR_CANDLIST.html> (accessed December 14, 2023). The deadline for Trump to file an affidavit withdrawing his candidacy was Friday, December 8, 2023, at 4:00 p.m. See MCL 168.615a(1) (the date to file an affidavit to withdraw one's candidacy is by 4:00 p.m. on the second Friday in December—December 8, 2023, in this election cycle). Trump has not done so.

Attorney General); MCL 168.91 (qualifications for the office of United States Senator); MCL 168.131 (qualifications to "be a Representative in Congress"); MCL 168.161 (qualifications for the offices of State Senator and Representative); and MCL 168.281 (qualifications for membership to the State Board of Education, Board of Regents of the University of Michigan, Board of Trustees of Michigan State University, and Board of Governors of Wayne State University). With each, there exists a mechanism for enforcement of these requirements before an election. Candidates for all of these offices, and many others, must file an affidavit of identity which includes a statement that the candidate "meets the constitutional and statutory qualifications for the office sought." MCL 168.558(1) and (2). And, pursuant to MCL 168.558(4), "An officer shall not certify to the board of election commissioners the name of a candidate who fails to comply with this section, or the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information or statement required under this section." Thus, candidates who file affidavits of identity containing false information are prohibited from appearing on the ballot. See *Reed-Pratt*, 339 Mich App at 517 (quotation marks and citation omitted) ("The failure to supply a facially proper affidavit of identity (AOI), i.e., an affidavit that conforms to the requirements of the Election Law, is a ground to disqualify a candidate from inclusion on the ballot"). This illustrates that when the Legislature wishes to require that election officers refuse to place ineligible candidates on the ballot, it has.

Yet, the Legislature has made plain that those seeking to run for the office of President of the United States are not required to file an affidavit of identity. MCL 168.558(1) ("The affidavit of identity filing requirement does not apply to a candidate nominated for the office of President of the United States or Vice President of the United States"). The process for identifying presidential primary candidates stated in MCL 168.614a and MCL 168.615a likewise says nothing of a presidential primary candidate filing an affidavit of identity. As such, the enforcement mechanism of MCL 168.558(4) has no application. Rather, when it comes to the presidential primary election, the statutory framework is different. As explained, nothing in the statutory framework that controls the process for presidential primary elections confers any authority on the Secretary of State to make eligibility determinations or to refuse to place a candidate on that particular ballot based on an eligibility determination.

Plaintiffs argue that Michigan recognizes a "well-established right" held by the voters to have only eligible candidates appear on primary and general election ballots. Plaintiffs rely on *Barrow*, 301 Mich App at 404, and a number of other election cases that followed *Barrow*, as standing for this right.

We disagree. *Barrow* was a mandamus matter in which one candidate for mayor argued that another candidate for mayor was ineligible to appear on an August 2013 primary ballot. The eligibility challenge was based on residency requirements stated in the Detroit City Charter, and ultimately was controlled by the fact that the challenged candidate filed his nominating petitions ten days before the one-year anniversary of his registration as a voter in the City of Detroit. *Id*. at 407-409. In upholding the trial court's decision, this Court explained that it was "undisputed that defendants have the statutory duty to submit the names of the eligible candidates for the primary election, see MCL 168.323 and MCL 168.719." *Barrow*, 301 Mich App at 412. Thus, "[t]he inclusion or exclusion of a name on a ballot" was, in that case, "ministerial in nature," making mandamus a potentially appropriate remedy. *Id*. This Court reviewed the facts and the charter provisions at issue, and concluded that the candidate was ineligible to be placed on the

ballot, as he was not a registered voter in the City of Detroit for a full year before filing to run for mayor. *Id*. at 417. This Court also addressed constitutional challenges made by the candidate, found those unavailing, and concluded that the candidate could not be placed on the ballot. *Id*. at 417-426.

Plaintiffs argue that *Barrow*, 301 Mich App at 412, stands for the proposition that voters have a "clear legal right . . . to have only eligible candidates on a primary election ballot." But *Barrow* does not stand for such a broad proposition. Rather, *Barrow* stands for the proposition that the defendant in that case, the Detroit Election Commission, had a clear legal duty, pursuant to statutes that do not control the outcome in this case, to place on the ballot only those candidates who were eligible to run in the mayoral primary race. For reasons explained previously, the statutes concerning the presidential primary contain no such right.

Plaintiffs cite other cases that have the same fault: *Berdy v Buffa*, 504 Mich 876 (2019) (concluding that some candidates were ineligible to run for city council under the local city charter, and thus, the city elections commission "had a clear legal duty to perform the ministerial act of removing the names of the challenged contestants from the ballots"); *Sheffield v Detroit City Clerk*, 337 Mich App 492; 976 NW2d 95 (2021), rev'd 508 Mich 851 (2021) (concerning whether the Detroit City Clerk was required to remove a proposal from an upcoming primary election on grounds that the proposed revised charter had not been approved by the Governor as required by MCL 117.22); *Burton-Harris v Wayne Co Clerk*, 337 Mich App 215; 976 NW2d 30 (2021), vacated in part, lv den in part 508 Mich 985 (2021) (concerning whether a candidate for county prosecutor made a false statement in an affidavit of identity and was thus precluded from appearing on the ballot pursuant to MCL 168.558(4)).[17] None of these cases involve the presidential primary or the statutes controlling that process, and they do not control the outcome in this matter.

Thus, we agree that plaintiffs' claims are not ripe to the extent they concern Trump's placement on the general election ballot, given all that must take place before that might occur. To the extent the claims concern the primary election ballot, while the claims may be ripe, there is no potential error. Even if Trump were disqualified from holding the office of President of the United States by the Insurrection Clause, nothing prevents the Michigan Republican Party from

---

[17] We note that the Supreme Court's order in *Burton-Harris* vacated this Court's entire analysis except that portion considering whether the trial court had abused its discretion by denying a motion to intervene. *Burton-Harris v Wayne Co Clerk*, 508 Mich 985 (2021). Thus, any substantive statement potentially relevant to this matter that might be derived from this Court's decision in *Burton-Harris* was vacated. Indeed, the pages of this Court's decision cited by plaintiffs are found in Section IV of the opinion, a section that was specifically vacated by the Supreme Court. *Burton-Harris*, 508 Mich at 985. Similarly, where this Court's decision in *Sheffield* was reversed, albeit on the basis that MCL 117.22 did not grant the Governor "an unfettered veto in the charter revision process," *Sheffield v Detroit City Clerk*, 508 Mich 851; 962 NW2d 157, 159 (2021), this Court's statements in the majority opinion are perhaps of limited consequence. But even ignoring all that, the point is the same: these cases do not concern the presidential primary or the statutes controlling the administration of that election by the Secretary of State.

identifying him as a candidate in the upcoming primary election. And, where the relevant statutes require the Secretary of State to place any candidate so identified on the presidential primary ballot, and confers no discretion to the Secretary of State to do otherwise, there is no error to correct.

Plaintiffs' complaint also requests a declaration that Trump is "disqualified from holding the office of President of the United States pursuant to Section 3 of the Fourteenth Amendment to the Constitution of the United States[.]" But a condition precedent to obtaining declaratory relief is the existence of an actual controversy, and where there is no actual controversy, there is no jurisdiction to grant declaratory relief. MCR 2.605(A); *Citizens for Common Sense in Gov't*, 243 Mich App at 55. An actual controversy exists where a declaratory judgment is needed to guide plaintiffs' future conduct, and requires plaintiffs to plead facts indicating an adverse interest necessitating the sharpening of the issues raised. *Van Buren Charter Twp*, 319 Mich App at 545.

As the Court of Claims recognized, it would be improper to decide whether to grant a declaration that Trump is disqualified from holding the office of President of the United States at this time. At the moment, the only event about to occur is the presidential primary election. But as explained, whether Trump is disqualified is irrelevant to his placement on that particular ballot. Thus, with respect to the presidential primary election, there is no actual controversy, as the only purported basis for removing Trump from the presidential primary ballot would not be a sufficient basis for removal of Trump's name from that ballot. Beyond that point in time, the request for a declaration that Trump is disqualified is not ripe. As explained, before Trump's potential disqualification from holding the office of President could become a relevant concern, he would minimally need to prevail in the primary process. That process has yet to begin, and whether Trump prevails in the primary process or becomes the Republican nominee for President are purely hypothetical questions at present. "[W]here the injury sought to be prevented is merely hypothetical, a case of actual controversy does not exist." *Citizens for Common Sense in Gov't*, 243 Mich App at 55. With no actual controversy, the Court of Claims was without jurisdiction to issue a declaratory judgment.[18]

## IV. CONCLUSION

In Docket No. 368615, we affirm the decision of the Wayne Circuit Court.

In Docket No. 368628, we affirm the decision of the Court of Claims.

A public question being involved, no costs may be taxed under MCR 7.219.

/s/ Anica Letica
/s/ Michael J. Riordan
/s/ Thomas C. Cameron

---

[18] We need not, and do not, decide today at what point in the process such a claim would become ripe. It is enough to conclude that, given the current state of affairs, the request for declaratory relief stated in the complaint is not ripe. Similarly, we do not address the Court of Claims' conclusion that the question of whether Trump is disqualified by the Insurrection Clause is a nonjusticiable political question.